City Item Co-operative Printing Co. vs. City et als.

No. 13,074.

THE CITY ITEM CO-OPERATIVE PRINTING COMPANY VS. THE CITY OF NEW ORLEANS ET ALS.

| | |
|---|---|
| 51 | 713 |
| 108 | 681 |
| 51 | 713 |
| 109 | 850 |

## SYLLABUS.

1. The taxpayer of a municipal corporation has a standing in court to sustain averments of illegality of a corporate act.

2. The power delegated to assessing boards to revise assessments, or to reduce them, is limited as to time, each year. Assessments and the revision of as-sessments are closed after the 20th of March, each year, subject to such changes in value of property assessed as the courts may decree. After the assessment has passed out of the hands of the assessing and revising offi-cers, they have no further power as relates to the value of the property carried on the rolls.

3. The assessment of property, as to value, is the same for the municipality as for the State; and a decree as relates to the latter, fixes it also as a basis of taxation for the former; and when revision and reduction is made as to one, it carries with it the assessment of the other at the same value.

4. If a taxpayer has a standing in court in opposition to an act *ultra vires,* no compromise can be made to put an end to his right of action as relates to the act attacked.

ON APPEAL from the Civil District Court for the Parish of Orleans. *Rightor, J.*

*E. A. O'Sullivan* for Plaintiff and Appellee.

*W. B. Sommerville,* Assistant City Attorney, for City of New Orleans, the Mayor, the Comptroller, and the Treasurer, Defendants, Appellants.

*Denégre, Blair & Denégre* for Crescent City Railroad Company, Defendant and Appellant.

Argued and submitted February 21, 1899.
Opinion handed down March 7, 1899.
Rehearing refused March 20, 1899.

The opinion of the court was delivered by
BREAUX, J. This suit was brought by plaintiff, a taxpayer, to annul and set aside two ordinances of the Municipal Council as hav-

ing been adopted in violation of the charter of the city, and in contravention of the Constitution and laws of the State.

An injunction was issued in accordance with the prayer of plaintiff's petition. The following is a brief history leading to the compromise assailed:

The Crescent City Railroad Company, after having made application to the Board of Assessors, and to the Revision Committee, for reduction of its assessment, filed suit in the Civil District Court, and obtained writs of injunction against the Board of Assessors for the reduction of the assessments of its franchise for the years 1894, 1895, 1896 and 1897. Three of the suits were consolidated and decided by the court of the first instance (the fourth, for reduction of assessment for 1897, is still undecided in the Civil District Court).

The consolidated suits, on appeal for reduction of assessments for the years 1894, 1895 and 1896, have been decided by the Supreme Court partly in favor of the Crescent City Railroad Company.

With reference to another company named in the compromise assailed, the New Orleans City and Lake Railroad Company, the City of New Orleans had been in suit with it since 1889, and the city had finally obtained a judgment against it (the New Orleans City and Lake Railroad Company), ordering it to comply with obligations by paving and planking along the line of its road.

Early in 1898 the officers of the city became apprehensive and uneasy about the city's claim against this railway, and about the city's claim against the Crescent City Railway Company for the taxes it owed the city.

Regarding the former, the New Orleans City and Lake Railroad Company, the testimony disclosed that the planking ordered by the court's decree was no longer desirable, and that part of the way had been paved with other material and, besides, it seems that the Board of Health had advised, on sanitary grounds, against the use of planks for paving.

The City Attorney had advised the chief executive officer of the city, that, in his judgment, it would be impossible to execute the judgment of the Supreme Court of the United States on the paving contract against the New Orleans, City and Lake Railroad Company.

Instead of specific performance, under the judgment of the United States Supreme Court, the judgment debtor, the New Orleans, City and Lake Railroad Company, at first offered forty thousand dollars,

which the city declined to accept. Subsequently, this company offered forty-five thousand dollars.

Regarding the latter (the Crescent City Railway) the Supreme Court had granted a rehearing; if the city gained the suit, it was thought that, even then, further litigation and delays might arise. The city authorities then gave a hearing to terms of compromise, which resulted in a compromise between the city and the companies.

The Mayor of the city, after an agreement had been arrived at, was authorized, by the Council, to settle the litigation between the city of New Orleans and the Crescent City Railway Company, upon payment within thirty days from the date of the publication of the ordinance granting the authority, of the amounts due for taxes by the Crescent City Railroad, and the forty-five thousand dollars offered by the New Orleans, City and Lake Railway as a compromise.

The amounts assessed by the assessors were the following:

| | |
|---|---|
| 1894 franchise | $649,650 00 |
| 1894 tax | 12,993 00 |
| 1895 franchise | 1,408,050 00 |
| 1895 tax | 28,161 00 |
| 1896 franchise | 1,215,267 00 |
| 1896 tax | 24,305 34 |
| 1897 franchise | 1,156,300 00 |
| 1897 tax | 23,126 00 |
| 1898 franchise | 575,000 00 |
| 1898 tax | 11,500 00 |

From the foregoing, we can see that the compromise entered into covered the taxes of four years, but the consolidated suits, decided, cover the taxes of three years, 1894, 1895, 1896.

This compromise between the city and the Crescent City Railroad Company was not to be carried out unless the New Orleans, City and Lake Railroad paid to the city the forty-five thousand dollars before stated, less credits for sums previously advanced to the city by the New Orleans, City and Lake Railroad, on account of the judgment it owed to the city.

We are informed that the two companies, the Crecent City Railroad Company and the New Orleans, City and Lake Railroad Company, were about to be controlled by one corporation or board, and that, in consequence, the two companies were embraced within one act of compromise, covered by one ordinance.

Plaintiff's grounds of attack are chiefly that the Municipal Council is without authority to adjust and settle suits; that the compromise was in effect a proposed donation to the Crescent City Railroad Company, and that the City Council has no right to remit interest due on taxes, or postpone payments.

A judgment was rendered by the judge of the District Court, perpetuating the injunction, and declaring illegal ordinances 14,658 and 14,703, in contravention of the Constitution and laws of the State, and in violation of the city charter.

From that judgment, the City of New Orleans and the Crescent City Railroad Company have appealed.

The foregoing is a sufficient statement of the facts for the purpose of the decision.

The right of plaintiff, as a taxpayer, to stand in judgment was questioned by defendants in oral argument, at bar, and in the brief, on the grounds, chiefly, that it had no interest involved, as it had paid its taxes, and could have no concern about those, who, like the Crescent City Railway Company, had been delinquent, and had effected a compromise, and, thereunder, a settlement of their taxes.

The right of a taxpayer of a municipal corporation to bring suit to test the validity of acts relating to taxation has been recognized by the courts, and the fact that he has paid his taxes does not make less his right to stand in judgment. Handy *et al.* vs. New Orleans, 39th Ann., 109, is a leading case upon the subject; citing Crampton vs. Zabriskie, 101 U. S., 601, from which we quote: "The action is regarded as having a public character, and as being a proceeding in which the public complains." Under these and other decisions, the right of a resident taxpayer to sue, in order to prevent an illegal distribution of the money of a municipality, can not be denied.

Although the creditors of the city may have been provided for as to their claims, as stated in argument, yet there remains an interest enough in the taxpayer to enable him to oppose any illegal release of any one indebted to the treasury. The larger the amount in the treasury to the credit of its different funds, the less the liability of the taxpayer.

The suit is in the nature of a public proceeding to test the validity of a corporate act.

We pass to the question of the power of the Municipal Council to compromise with a delinquent taxpayer, and release him from pay-

ment of part or all of his taxes, while a suit for a reduction of his assessment is pending before the courts.

It is well settled that corporations have such powers as are given to them.

There are special laws applying in matter of taxation.

The Constitution specially prohibits the General Assembly, and it follows, subordinate municipal corporations, from releasing or extinguishing any tax indebtedness to the State, or due to any of its municipalities.

It devolves upon us to determine, in the case before us for decision, whether the tax indebtedness here of the Crescent City Railway was within the scope of the prohibition.

There had been a final assessment made.

While the assessing authorities have the rolls in their possession in an incomplete state, they may reduce the assessment, but not after the assessment has passed from their hands. All taxpayers have the right to appear before the Board of Assessors of the parish of Orleans until the 20th of March, and in other parishes until the first day in November, and should be heard regarding over-valuation of property, but not after those dates.

The question of value of the property assessed after the filing of the taxpayers' suit, passes from the assessor and revising committees to the courts. The defendants urged that the assessment, as relates to those who appeal to the courts, is not complete; that not being complete, a compromise may be made as was made in the pending case. We have not found it possible to give our assent to that view.

The suit brought does not have the effect of suspending the assessment; it is legal to the amount the court finds in the value of the property. Every person is taxed for the year, and the assessment dates from the day it was made, and not from the date of the final decision of the court pronouncing it legal as to value (for a part or the whole) as carried on the roll.

We have just seen that the power of revision is limited by the statute as to time. After the date fixed by the statute is passed, in the absence of expressed delegation of power to the assessor and committee of revision, we must conclude that reduction of assessment is no longer possible save by the decree of the court.

In State and municipal taxation, the assessed value is the same. The same officer makes the assessment for both the State and the

municipality; the same roll is used, and the same amount as to the value of each property assessed.

"The valuation put upon property for the purpose of State taxation .shall be taken as the proper valuation for the purposes of local taxation in every subdivision of the State." Constitution of 1898, Article 203.

It follows that no compromise can be made on the basis of property .being of less value when the municipality is concerned than when the State is concerned.

But conceding for the discussion that an agreement is possible, ·regarding the value of property assessed, or the amount of taxation, the taxpayer still has an action to set aside a compromise, which action, the compromise itself can not put an end to and destroy.

Even where, as in the case before us for decision. there was not the least intentional wrong, and all that was done is marked by the utmost good faith, and to promote the city's interest, yet the taxpayer of a municipal corporation may be heard, who urges that the act of the municipal authorities, relating to assessment and taxation, is *ultra* ·*vires*, and increases the weight of taxation.

We have read with painstaking care the two elaborate briefs filed on behalf of the defendants. The burden of their complaint is grounded upon the principle laid down by many courts in other jurisdictions in support of the proposition that municipal corporations have the power to effect a compromise of claims in which they are concerned.

The question covered by the last proposition does not arise in the case before us. We have naught to do with the city's right, ordinarily, to compromise claims. We do not, for that reason, pass upon that question. This, as we think, disposes (without the necessity of any further comment regarding them) of all the decisions cited by ·counsel regarding the compromise of claims, other than those growing out of assessments or taxation.

But Revenue Laws are *sui generis,* and particularly those applying in the case before us for decision.

In order to create an interest in local government and to guarantee every right, the State accords to each taxpayer the right and privilege ·of enquiring into the questions of assessments and taxation in which all are concerned. It results that a compromise regarding taxes, as made in this case, can not be made to operate as a hinderance to the assertion of that right. However absolute may be the power of a city

council to compromise a claim, it can not effect such a compromise, as relates to assessment, as will prevent inquiry into its legality by a taxpayer.

Counsel for defendants urged that from the right given to the City of New Orleans to sue and be sued, it resulted in the absence of prohibitory legislation, that the city has the same right to compromise that an individual has.

Ordinarily that may be; we are only concerned with the question before us, relating exclusively to the value of the property assessed, a question which passes, as we take it, each year, from the Board of Assessors and local authorities to the courts, after the date set down in the statute. We take it also, that, after an assessment has been made, the value of the property can not be changed so that it will have less value, as relates to the city or the parishes, than the assessment for the State. Constitution of 1898, Article 225.

For reasons assigned, the judgment appealed from is affirmed.