# DECISIONS

## OF THE

# Court of Appeals of Kentucky.

## APRIL TERM, 1901.

CASE 1—ACTION TO RECOVER TAXES—MAY 28.

# City of Louisville v. Louisville Ry. Co.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. REVERSED.

MUNICIPAL CORPORATIONS—POWER TO COMPROMISE CLAIMS FOR TAXES.

Held: 1. Under Constitution, section 52, providing that "the General Assembly shall have no power to release, extinguish, or authorize the releasing or extinguishing, in whole or in part, the indebtedness or liability of any corporation or individual to this Commonwealth, or to any county or municipality thereof," the general council of a city has no power to compromise a claim for taxes after the assessment has been regularly made and the claim has come into the hands of the collecting officer; and especially has the general council of a city of the first class no such power after the city attorney has brought suit on the unpaid tax bill, as provided by Kentucky Statutes, section 3005.

2. The city attorney of a city of the first class has no power to compromise claims for taxes either before or after suit is brought.

HENRY L. STONE, CITY ATTORNEY, FOR APPELLANT.

### POINTS.

1. The powers and duties of the city attorney of a city of the first class with respect to the institution, conduct, control and prosecution to judgment of suits to recover delinquent taxes, are *statutory*, and the general council, with or without the approval

of the mayor, has no lawful power by resolution, or otherwise, to release or extinguish the liability to the municipality for taxes of any delinquent corporation or individual, or for that purpose to direct the city attorney to dismiss a suit for such taxes.

2. The State Constitution provides: "Section 52. The General Assembly shall have no power to release, extinguish or authorize the releasing or extinguishing, in whole or in part, the indebtedness or liability of any corporation or individual to this Commonwealth, or to any county or municipality thereof." This section withholds the power from the General Assembly to authorize the releasing or extinguishing, in whole or in part, the liability of any corporation, or individual for municipal taxes.

3. A municipality is not estopped from collecting the remainder of the tax bills due it, by reason of the acceptance by its tax receiver of part of such tax bills in full of the whole amount, under a resolution of the general council approved by the mayor in violation of section 52 of the State Constitution.

## AUTHORITIES CITED.

1. The general council has no power to direct or control the action, conduct of management of the city attorney of suits instituted by him in behalf of the city of Louisville to recover taxes. Sections 2743, 2984a (sub-sec. 8), 2909, 2997 to 3009, 2998, 3005, 4021, Kentucky Statutes; Dillon on Municipal Corporations, sec. 98; City of Placerville v. Wilcox, 35 Cal., 21; Lyddy v. Long Island City, 104 N. Y., 218; Donovan v. City of New York, 33 N. Y., 291-293; Mayor of the City of New York v. Furze, 3 Hill (N. Y.), 612; Clough & Wheat v. Hart, 8 Kansas, 487; State v. City of Paterson, 40 N. J. L., 186; Ransom v. Mayor of New York, 24 Barb., 226; Dillon on Municipal Corporations (sec. 89 and notes); Henderson v. City of Covington, 14 Bush, 312; Spaulding v. Lowell, 23 Pickering, 71, and authorities cited in note 1; section 55, Dillon on Municipal Corporations; Commonwealth v. Kimberlin, 8 Bush, 444; City of Louisville v. Bank of Commerce, and Samuel H. Stone, Auditor, &c., v. Same, 174 U. S., 412 and 428; section 52, State Constitution.

2. The resolution of the general council undertaking to release the liability of the appellee company for any portion of the tax bills sued on is *ultra vires*, unconstitutional and void. Section 52, State Constitution of Kentucky; section 10, art. 11, State Constitution of California; sec. 8, art. 10, State Constitution of Colorado; sec. 23, art. 4, State Constitution of Illinois; sec. 51, art. 4, State Constitution of Missouri; sec. 4, art. 9, State Constitution of Nebraska; sec. 55, art. 3, State Constitu-

City of Louisville v. Louisville Ry. Co.

tion of Texas; sec. 8, art. 11, State Constitution of Washington; sec. 40, art. 3, State Constitution of Wyoming; Dillon on Municipal Corporations, sec. 781; Cooley on Taxation, pp. 200-201 and notes; State v. Graham, 17 Neb., 43; County of Lancaster v. Trimble, 33 Neb., 121; Wood v. Helmer, 10 Neb., 68; Hannibal v. M. & K. Tel. Co., 31 Mo. App., 23; State of Nevada v. Central Pacific Railroad Co., 9 Nev., 79 (Compiled Laws, 3156, 3127); State v. Commissioners of Washoe County, 5 Nev., 319; Swift v. Commissioners of Oemsby County, 6 Nev., 97; Hess v. Commissioners of Washoe County, 6 Nev., 108; White v. Canover, 5 Blackford, 463; Rosenthal v. M. & I. Plankroad Co., 10 Ind. 361; City of Lowell v. Commissioners of Middlesex, 3 Allen, 550; Finch v. Tehama County, 29 Cal., 455; State v. Western Union Telegraph Co., 4 Nev., 345; sec. 8, sub-division 12, Statutes of 1864-5, p. 259; sec. 29, Statutes of 1871, pp. 93-94 (Nevada); State of Nevada v. Central Pacific Railroad Company, 10 Nev., 47; Wilson v. Supervisors of Sutter County, 47 Cal., 91; State v. Hannibal & St. Joseph Railroad Co., 75 Mo., 208; Dillon on Municipal Corporations (3d ed.), 94, and cases cited; Dillon on Municipal Corporations, sec. 97, and cases cited; Cooley on Constitutional Limitations, p. 2, and cases cited; 2 Dillon on Municipal Corporations, sec. 736; Cheeney v. Brookfield, 60 Mo., 53; Mack v. Jones, 21 New Hampshire, 393; People v. Campbell, 93 N. Y., 196; City of New Orleans v. New Orleans Sugar Shed Company, 35 La. An., 548; City of Dubuque v. Illinois Central Railroad Company, 39 Iowa, 56; Davenport v. Chicago, Rock Island & Pacific Railroad Company, 38 Iowa, 633; State v. California Mining Co., 15 Nev., 234; Holden v. James, 11 Mass., 414; Picquet, appellant, 5 Pick., 68; State v. Allen, 32 Texas, 273; Madison County v. Smith, 95 Ill., 328; Jack v. Weiennett; 115 Ill., 114; Dillon on Municipal Corporations, sec. 445-447; Whiting v. Town of West Point, Va., 8 Lawyers' Rep. Ann., 860, and notes; Mix v. People, 116 Ill., 265; Ollivier v. City of Houston, 54 S. W. Rep., 940; Ib., 943.

3. No estoppel by reason of partial payment of taxes due under an invalid agreement.    Stone, Auditor, *et al.*, v. Bank of Commerce, 174 U. S., 426-428; City of Kansas v. Hannibal & St. Joseph Railroad Company, 81 Mo., 285; Jones v. Bullitt, 2 Lit., 51; Patterson v. Garret, 7 J. J. Mar., 114; Cutter v. Reynolds, 8 B. Mon., 598; Williams v. Langford, 15 B. Mon., 569; Fenwick v. Phillips, 3 Met., 88; Roberts v. Barnum, 80 Ky., 28.

4. Appellant's rights on a reversal of the judgment appealed from. Louisville City Railway Co. v. City of Louisville, 4 Bush, 478; City of Newport v. S. Cov. & Cin. R'y. Co., 89 Ky., 29; Levi v. City of Louisville, 97 Ky., 394; Third Biennial Compilation of Ordinances of the City of Louisville, p. 245.

ST. JOHN BOYLE AND HUMPHREY, BARNETT & HUMPHREY,
ATTORNEYS FOR APPELLEE.

Two questions will be discussed before the court on the hearing of this cause. The first of these is: Was the learned judge of the chancery division correct in his ruling that this case should be dismissed, and, following that ruling, should this court discuss the appeal on the motion heretofore entered by the appellees?

The second question is: What would be the proper order to be made should this court determine that the lower court erred in its judgment?

The claims for taxes sued on herein were compromised with the appellee by an agreement between appellee, the city assessor and the tax receiver, and approved by a resolution of the city council which was approved by the mayor September 25, 1899.

This compromise having been made after suit was filed by the city attorney, he claims that the general council has no lawful power or authority to make such compromise, and the lower court having sustained the compromise settlement and dismissed plaintiff's suit, the city has appealed.

1. Can there be any compromise of a claim which is alleged to belong to a municipal corporation?

Section 52 of our State Constitution is as follows: "The General Assembly shall have no power to release, extinguish, or authorize the releasing or extinguishing, in whole or in part, of the indebtedness or liability of any corporation or individual to this Commonwealth or to any county or municipality thereof."

The simple construction of the language of this clause is, that neither the General Assembly nor any county or municipality can release, extinguish or authorize the releasing or extinguishing of any indebtedness or liabliity as fixed; in other words, that the General Assembly can not for the State, nor can it authorize any county or municipality in the State to gratuitously release, in whole or in part, any indebtedness or liability.

We can not believe that it was within the view of any member of the convention, or of the people, in adopting the Constitution to deprive the State and every county and municipality in the State of the absolutely necessary business power of compromising disputed indebtedness and liabilities. Certainly the power to compromise has always been considered one of the powers necessarily incident to a State or to a municipality, and involved in the ordinary power to contract and in the ordinary power to sue.

City of Louisville v. Louisville Ry. Co.

The next question is: Has the city attorney the right to insist upon the prosecution of these cases when the city council, with the assent of the mayor, has compromised them and received the fruits of this compromise?

The city attorney seems to make a distinction between the power of the council to control the prosecution of a suit, and its power to control the defense of a suit.

The agreement of compromise itself states the reason for it. These franchise taxes, these personal property taxes were all challenged; the defendant not only insisting that it was protected by its contract, but was able to show that the general council had, since the adoption of the present charter, made an arrangement based upon that contract.

The defendant also asserted its ability to show that the method of arriving at the amount of franchise taxes claimed in these cases was not the correct one; that the right amount of tangible property had not been deducted; that the right of apportionment had not been made. All these questions were seriously asserted by the defendant who expected to be able to prove them true. There was absolutely no charge of fraud or misrepresentation or concealment of any kind. The compromise was assented to by the city assessor, an officer of long experience and approved integrity, by the tax receiver, who had full knowledge upon all these subjects, and whose fidelity to the interest of the city has never been doubted. Besides this, the compromise had the concurrence of both boards of the general council and of the mayor.

We respectfully submit therefore that it is not within the power of the city attorney to further continue this litigation, and that this court should dismiss this appeal as being prosecuted without the authority of the appellant and against its express desires.

## CASES CITED.

Board of Frankfort v. Stone, 22 Ky. Law Rep., 25, 502; 1 Dillon on Mun. Corp., sec. 477; Prout v. Inhabitants of Pittsfield, 28 N. E., 679; 154 Mass., 450; O'Brien v. Mayor of N. Y., 57 N. Y. Supp., 1039; 40 App. Dev., 331; Agnew v. Brall, 16 N. E., 231; 124 Ill., 312; Gould v. Cayuga County Nat. Bank, 86 N. Y., 77; Vandervelden v. C. & N. W. R. Co., 61 Fed. Rep., 54; St. Charles R. Co. v. Board of Assessors, 51 La. Ann., 459; 25 S. R., 90; Paine v. Woolley, 80 Ky., 568; Stone v Bank of Commerce, 174 U. S., 413; Home Soc. v. Muehl, 59 S. W., 520; L. & N. v. McElroy, 100 Ky., 153.

OPINION OF THE COURT BY JUDGE WHITE—REVERSING.

In these two cases the city of Louisville, by and through its city attorney, brought actions against the appellee, Louisville Railway Company, for taxes for the years 1893, 1894, 1895, 1896, 1897, and 1898, alleged to be due and unpaid. These taxes were alleged to be due on franchise, as assessed by the State Board of Valuation and Assessment for the years 1893, 1894, 1895, 1896, and 1897, and upon assessments by the county assessor for 1894, 1895, 1897, and 1898. The amount of tax sought to be recovered is about $311,188. To these actions appellee filed answers containing some fifteen paragraphs, in which there are specific denials of all allegations as to the assessment of the property and levy of the taxes; the denials being made in lack of knowledge or information sufficient to form a belief, although all these matters must be of record at the proper office. Other paragraphs presented matters of defense, pleading a contract with the appellant city to pay a license tax in lieu of all taxes; pleading the repeal of the statute authorizing the assessment by the State Board of Valuation and Assessment of the franchise for the purpose of city taxation by the enactment of the charter of appellant; pleading that the valuation of the franchise as fixed by the board was too great and excessive, because a part of its track and plant extended beyond the limits of the city. These are among the defenses presented by the answer of appellee. A demurrer to several of these paragraphs was sustained by the court, and as to others overruled. While the two cases were pending an agreement of compromise was entered into by and between the appellee company and D. F. Murphy, city assessor, and J. B. Camp, tax receiver on behalf of the city, by which it was agreed that on payment of $177,093.48 in full compromise

and satisfaction of all taxes, except on real estate, and in addition to license tax theretofore paid of $122,312.68, making a total sum of $299,406.16 for those years, the two suits for taxes would be dismissed, settled, at the cost of the defendant. This agreement was approved by the mayor, Charles P. Weaver, and subsequently by resolution of the general council of the city. This compromise agreement was made under a resolution of the general council approved January 11, 1896, as follows: "Be it resolved by the general council of the city of Louisville that the city attorney, the tax receiver, and the assessor are hereby appointed and constituted a board having power and authority to compromise any and all claims for back taxes by the city of Louisville against individuals where said claims, in the opinion of said board, are in any wise doubtful, or where, in the opinion of said board, said compromise will redound to the substantial benefit of the city." In this compromise agreement the city attorney did not participate, and did not agree thereto. On the approval of the compromise agreement by the general council, the amount of $177,093.48 was paid by appellee, as stipulated. The resolution approving the compromise agreement provided: "Sec. 2. That the city attorney be instructed to dismiss all suits pending between the city of Louisville and the Louisville Railway Company involving taxes claimed by the city against the said railway company." After these matters of compromise had been completed, the appellee filed an affidavit showing the compromise payment, and order to the city attorney to dismiss suits, and asked the court to order dismissal. The court took the matter of dismissal under advisement, pending which the city attorney took proof on the controverted facts. The court, after having considered the motion, ordered the two ac-

tions dismissed, settled over the protest and objection of the city attorney. There was no trial on the merits,—only the order of dismissal, from which these appeals are prosecuted.

Appellee has entered motions in this court to dismiss the appeals, the same reasons being given as are presented why the judgment and order of dismissal in the court below should be affirmed. It is contended by counsel for appellee that as appellant is a municipal corporation, and governed by the act of July 1, 1893, relating to cities of the first class, it has full power, by and through its general council, to manage the affairs of the city in such way and manner as they may deem best, and, while it is not contended that the general council could accept less than the sum due on a fixed liability, it may, on all doubtful or unliquidated matters, compromise with the party, and accept less than the full sum claimed, or may pay by way of compromise in excess of what they deem justly due. The contention of counsel, as we understand it, is that in all matters where the sum due the city is not finally fixed and certain, and where there is any controversy as to the right to collect or as to the sum due, the general council may agree with the party on any basis they deem proper, and finally adjust the matter, and thus bind the municipality the same as a natural person might bind himself by compromise agreement; that this power exists to compromise tax claims, by the city, as well as any other that might arise. On the other hand, the city attorney contends that, because of section 52 of the Constitution, the compromise is *ultra vires* and void, as beyond the power of the general council. Upon this question the whole case depends; for, if the compromise agreement is binding on appellee, the

order of dismissal was proper, as there could have been no final recovery by appellant.

Section fifty-two of our Constitution reads: "The General Assembly shall have no power to release, extinguish or authorize the releasing or extinguishing, in whole or in part, of the indebtedness or liability of any corporation or individual to this Commonwealth or to any county or municipality thereof." This provision was not contained in any previous Constitution of this State, and this section has never been construed by this court, so far as we are advised. Similar constitutional provisions are found in the Constitutions of the States of California, Colorado, Illinois, Louisiana, Montana, Missouri, Nebraska, Texas, and Wyoming, and possibly others that we have overlooked. The charter of appellant, at section 2742, Kentucky Statutes, sets forth the powers granted to it by the Legislature. It reads: "That the inhabitants of cities of the first class are hereby continued corporate by the name and style which they now bear, with power to govern themselves by such ordinances and resolutions for municipal purposes as they may deem proper, not to conflict with this act, nor the Constitution and laws of the State, nor of the United States; with power to contract and be contracted with; to sue and be sued; to defend and be defended in all courts; to acquire property for municipal purposes or otherwise; to hold the same and all property and effects now belonging to them in their own names or in the names of others, to the use of the city for the purposes and intents for which the same were granted or dedicated; to use, manage, improve, sell and convey, rent or lease the said property, and have the like powers over property hereafter acquired; to have a common seal, and change it at pleasure, and act with or with-

out a seal." Section 2783 provides: "The general council shall have the power to pass, for the government of the city, any ordinance not in conflict with the Constitution of the United States, the Constitution of Kentucky and the statutes thereof." The question is presented, is the compromise agreement and the resolution approving the same contrary to the State Constitution (section 52, *supra*)?

In the State of Louisiana, where the constitutional provision is almost identical with ours, a case arose questioning the validity of a compromise made by the city of New Orleans with the Crescent City Railroad Company for municipal taxes; the action being by an individual taxpayer. The court said: "We pass to the question of the power of the municipal council to compromise with a delinquent taxpayer, and release him from payment of part or all of his taxes, while a suit for reduction of his assessment is pending before the courts. It is well settled that corporations have such powers as are given to them. There are special laws applying in matters of taxation. The Constitution specially prohibits the General Assembly, and, it follows, subordinate municipal corporations, from releasing or extinguishing any tax indebtedness to the State, or due to any of its municipalities. It devolves upon us to determine in the case before us for decision whether the tax indebtedness here of the Crescent City Railway was within the scope of the prohibition. There had been a final assessment made. While the assessing authorities have the rolls in their possession in an incomplete state, they may reduce the assessment, but not after the assessment has passed from their hands. All taxpayers have the right to appear before the board of assessors of the parish of Orleans until the 20th of March, and in

other parishes until the first day of November, and should be heard regarding overvaluation of property, but not after those dates. The question of value of property assessed after the filing of the taxpayer's suit passes from the assessor and revising committees to the courts. The defendants urged that the assessment, as relates to those who appeal to the courts, is not complete; that, not being complete, a compromise may be made, as was made in the pending case. We have not found it possible to give our assent to that view. The suit brought does not have the effect of suspending the assessment. It is legal to the amount the court finds in the value of the property. Every person is taxed for the year, and the assessment dates from the day it was made, and not from the date of the final decision of the court pronouncing it legal as to value [for a part or the whole] as carried on the roll." City Item Co-operative Printing Co. v. City of New Orleans, 51 La. Ann., 713 (25 South., 313). Counsel for the city and the railway company in the case, *supra*, did not contend that the city might legally compromise a tax claim after the amount was finally fixed by the assessing authorities, but that the right of compromise did exist until the final valuation was made by the courts, as it seems was a method of procedure allowed there, and that, as the question of value was undecided by the court, the compromise must be upheld. The supreme court, however, held that, after the assessment had been made by the proper authorities, the city could not compromise the tax claim; the final conclusion of the court being, "It follows that no compromise can be made on the basis of property being of less value when the municipality is concerned than when the State is concerned." The same court, in the case of City of New Orleans v. Sugar-Shed Co., 35

La. Ann., 550, said, "It takes no argument or authority to establish that the city had no power to exempt the property of the defendant, or to commute the taxes upon it, as is claimed was done."

In the State of Illinois, where the constitutional provision (article 5, section 23) is almost identical with that of our Constitution (section 96), the supreme court, in the case of Board v. Smith, 95 Ill., 335, said: "Again, we are not aware of any power in the county board to make any abatement of taxes legally assessed, extended, and placed in due course of collection. If a party is aggrieved by an over assessment, he should apply to the board of review to have it corrected, or to the July session of the board, under the ninety-seventh section of the revenue law. But when property has been assessed, and the tax extended, and the books placed in the hands of the collector, we are aware of no law authorizing the board to make any abatement. Or even after its session on the second Monday in July the General Assembly has conferred no power on the board to abate State or other than county taxes, and we are not informed of any express authority for that body to abate county taxes. If the county board may abate State and other municipal taxes in one case, they may in all cases. If they may do so for one reason, they may for any reason or without reason, and thus defeat the collection of all revenue." The same court, in Mix v. People, 116 Ill., 273 (4 N. E., 786), said: "The law has designated a certain person to assess and fix a value upon property for purposes of taxation, and given a remedy to parties aggrieved by his action to have the same reviewed. If the parties neglect this opportunity, they at least can not contest the matter in a suit like this, brought to enforce the lien given by the statute against the lands for

the non-payment of the taxes.     The action of the Board
of Supervisors in appointing a committee to reassess these
lands for the purposes of taxation, and their compromise
with plaintiffs in error regarding the State and county
taxes, was clearly unauthorized." The supreme court
of Illinois recognizes the right and power of the city
council to compromise ordinary claims due to or by the
city.     In the case of Agnew v. Brall, 124 Ill., 314 (16 N.
E., 231), the court said:     "They [city council] have no
power to squander or give away the funds or property of
the incorporation, but all property within their control
belonging to the incorporation must be honestly applied
to the uses and purposes specified in the act of incorpora-
tion.     The city council have no power to sell or in any
manner dispose of the property of the corporation with-
out consideration, and, in our opinion, they have no right
to discharge a debt without payment which may be held
against parties who are solvent and responsible, where
no controversy exists in regard to the validity and binding
effect of the indebtedness.     But a municipal corporation
has power to settle disputed claims against it.     Dill. Mun.
Corp., section 398.     It may prosecute suits in favor of
the corporation, and defend actions brought against it. It
may sue and be sued, and the right to settle matters in
litigation follows logically from the right to maintain or
defend actions.     This doctrine is well stated in President,
etc., v. Mappin, 14 Ill., 195, where it is said the power to
prosecute suits in behalf of the corporation includes the
power to settle same.     So the power to defend suits
brought against the corporation gives them the same power
of adjustment.     They may compromise doubtful controver-
sies to which the corporation is a party, either as plaintiff
or defendant."     The court there says that the power to

compromise suits had long been recognized in that State, yet in tax cases had held a compromise unauthorized and void.

Section 4 of article 9 of the Constitution of Nebraska is very similar to section 52 of our Constitution. In the case of State v. Graham, 17 Neb., 43 (22 N. W., 114), the supreme court of that State, after quoting section 4, said: "Revenue is to be provided by levying a tax by valuation, so that every person and corporation shall pay tax in proportion to his, her, or its property and franchises; and the Legislature shall have no power to release any county, city, etc., or the inhabitants thereof, from their proportionate share, nor shall commutation be authorized in any form. Stronger language could scarcely be used. In effect, the Constitution guaranties to every property owner in the State that his property shall be liable for the just proportion of taxes due thereon according to the valuation as ascertained by law, and for no more. It deprives the Legislature of the power to add to this amount, or to discriminate between taxpayers in any manner or form. Now, what the Legislature can not do directly it can not do indirectly. If it can not say to A., 'You must pay the entire taxes levied upon your property,' and to B., 'You need pay but fifty per cent. of the amount thus levied,' it can not accomplish by indirection what it is prohibited expressly from doing." The force and effect of the constitutional provision again came before the court in the case of Lancaster Co. v. Trimble, 33 Neb., 125 (49 N. W., 939). The court said: "The Legislature is without power to release any inhabitant or corporation from his or its proportionate share of taxes, nor can it confer such authority upon county commissioners. It has authorized them to purchase real estate at tax sale, but

has provided for the foreclosure of tax certificates in their hands only when the amount due thereon exceeds a specified sum. The proviso clause of the section of the statute quoted expressly prohibits county commissioners from foreclosing tax liens when the amount of the lien is $200 or less. It, in effect, places it in the power of county commissioners to release the taxes upon lots and lands where the amount of the delinquent taxes thereon is not over $200. All they would have to do to accomplish it is to purchase that kind of property for the county at tax sale. The Legislature is powerless to confer such authority. It can not do indirectly what the Constitution prohibits it from doing directly. That is clear. Wood v. Helmer, 10 Neb., 68 (4 N. W., 968)."

The supreme court of Missouri, in State v. Hannibal & St. J. R. Co., 75 Mo., 210, held that a municipal corporation had no power to grant exemption from or commutation of taxes, and a contract undertaking to do so was void. In City of Kansas City v. Hannibal & St. J. R. Co., 81 Mo., 290, the court said: "Nor did the court err in the exclusion of the evidence of a compromise effected by the defendant with the county court by which a less sum than that demanded by the city was accepted in full of that demanded. The county court had no authority to compromise the city taxes. . . . The city council of Kansas City is forbidden to compromise city taxes, by the charter of the city, and therefore could not ratify a compromise made by the county court."

Section 55, art. 3, of the Constitution of Texas is to the same effect as section 52 of our Constitution. An action was begun by the city of Houston in January, 1899, for taxes due for the years 1892 and 1893 from certain persons. In May, 1899, an amendment to the

charter of Houston became effective which provided that
suits for taxes should be barred by limitation of four
years, and that such plea might be interposed to actions
already instituted.   The question of the validity of this
act as to the actions begun in January prior to its enact-
ment was before the court of civil appeals in Ollivier v.
City of Houston, 54 S. W., 940, and its opinion was ap-
proved by the supreme court, at page 943, 54 S. W.   The
court of civil appeals said:   "The inevitable effect of
the law under consideration is to extinguish the liability
of appellant for the taxes alleged to be due by them,
and this, as to pending suits for taxes coming within
its provisions, was its manifest purpose.   By that pro-
vision of the Constitution (section 55, art. 3) the Leg-
islature is forbidden to pass any law which would 'extin-
guish any liability, indebtedness or obligation to the State
or any county or city,' and thereby power to extinguish
liability for taxes was denied.   The Constitution of it-
self furnishes many evidences of the earnest purpose of
the framers to render impossible every form of governmen-
tal favoritism.   The granting of special privileges, the
bestowal of favors, the lightening of the public bur-
dens as to one citizen at the expense of others, are con-
trary both to its spirit and its letter. So it is declared that
taxation shall be equal and uniform.   But the force of
this provision would be defeated if the power remained
to relinquish at will the liability thus justly and fairly
fixed.   For the prevention of these evils this provision was
inserted.   Its terms are broad enough to cover every
conceivable obligation or liability, the remission of which
would diminish the public revenue, and thereby either
directly or indirectly impose a heavier tax upon those not
affected by the exemption. .   .   .   For these reasons,

City of Louisville v. Louisville Ry. Co.

the contention of appellant that the power rests in the
Legislature to extinguish the liability of a citizen of a
municipal corporation for taxes levied and assessed in a
case where the vast majority of his fellow citizens have
paid their part of the taxes thus levied, seems inconsistent
with the spirit of our institutions, and utterly untenable
from any point of view.    But it is urged that the law
in question, while it may operate to extinguish the liabil-
ity of the citizen, is, after all, but a law fixing the limita-
tion of actions, and that its incidental effect upon such
cases as the one before us does not affect its validity.
That a power can not be exercised incidentally or by in-
direction which could not be directly exercised is elemen-
tary.    The effect of the act is to relinquish liability.    The
purpose to accomplish that end is manifest.    The ordi-
nary effect of changes in the law of limitation is not to
extinguish any right or liability, but to limit the time
within which it may be enforced.    The right may be lost
or the liability extinguished by delay or negligence, but
such result is not chargeable to the law.    So, in this in-
stance, if the city were required to sue hereafter within
a prescribed time, the validity of the act would be beyond
question.    But, as the matter is presented, the city had
already undertaken, within a time permitted by the then
existing law, to enforce the collection of these taxes.    The
liability was existent, and the rights thereunder unim-
paired, when the act took effect.    No opportunity was
given to the city to proceed with its remedy.    The result
was the effectual exemption of the property of appellants
from taxation for the years named. . . .    The act
has been discussed from the standpoint of its effect upon
this class of cases alone, and, in so far as it would have

the effect of defeating actions pending at the time it became effective, it is held to be unconstitutional."

In the State of Nevada the question arose as to the power of county commissioners to compromise taxes, a suit for which was pending. The county commissioners of that State had power very similar to our fiscal court. In deciding this question the supreme court in the case of State v. Central Pac. R. Co., 9 Nev. 79, at page 88, said: "Did the board of county commissioners have any authority to make the compromise with defendant? It is not claimed that there is any law expressly giving to the commissioners power to compromise and settle suits instituted by the State for the collection of delinquent taxes. But it is argued by defendant's counsel that section 8, subd. 12, of the statutes of 1864-65 (page 259), giving to the commissioners power 'to control the prosecution or defense of all suits to which the county is a party,' and section 29 of the statutes of 1871 (page 94), providing that 'no suit for the collection of delinquent taxes shall be commenced except by the direction of said board,' imply that it was the intention of the Legislature to invest the commissioners with full power to control the collection of taxes, and 'that, when the process of collection has taken the form . . . of an action at law, the county commissioners have control of such action.' This position is wholly untenable. The board of county commissioners is an inferior tribunal of special and limited jurisdiction. It must affirmatively appear that the action of the board in compromising with defendant was in conformity to some provision of the statute giving to it that power, else its order was without authority of law and void." This position was reaffirmed in a case of the same title. 10 Nev. 48, at page 84.

In Massachusetts, where the county commissioners were permitted to abate taxes upon proper showing, they were denied the right to allow interest on the taxes refunded in the case of City of Lowell v. Middlesex County Commissioners, 3 Allen, 550. To the same effect are the cases of Wilson v. Supervisors, 47 Cal., 91; City of Dubuque v. Illinois Cent. R. Co., 39 Iowa, 56.

We think it clear from these authorities, under constitutional provisions like our own, even if the provision of section 52 were not plain, that there is no authority given, or could be given, to the general council of appellant to release in whole or part the taxes due from any individual or corporation. If the general council could compromise at less than the amount due, at the fixed rate and assessed value, the liability of any person or corporation, even after suit had been instituted, it could then by indirection do what the Constitution forbids; that is, release a part of a liability. If it was desired by the general council to release taxes, the officers would delay and return delinquent, and suit would be brought and compromise effected at the reduced amount. To prohibit the possibility of such a procedure, the section of the Constitution was enacted. The further provision for uniformity of taxation on all property is a further safeguard against discrimination in taxation or a reduction or release of part of the taxes. We do not mean to hold that an unlimited demand by or against the city can not be compromised, but we think that, when the liability to the city is fixed, it can not be relinquished in whole or in part. When the property has been regularly assessed, and the assessment passes from the officer making it, and the claim comes into the hands of the collecting officer, we are clearly of opinion that the liability is fixed,

so that less can not be accepted in satisfaction thereof.
When the actions for these taxes were brought, more than
a year had elapsed after the assessment became final,
and all statutory right to question the amount of the as-
sessed valuation had long since passed.    Moreover, the
tax bills were *prima facie* correct as to amount, and appel-
lee's liability therefor was fixed, so far as legal procedure
before the board of assessment, valuation, and equaliza-
tion was concerned.    The compromise agreement was
beyond the power of the general council, and was *ultra
vires* and void.

There is yet another reason why the general council
could not make the compromise agreement.    By section
2909, Kentucky Statutes, it is provided:    "There shall be
elected by the general council immediately upon the as-
sembling of the new board, a city attorney, whose duty
it shall be to give legal advice to the mayor and members
of the general council, and all the officers and boards of
the city in the discharge of their official duties.    If re-
quested, he shall give his own opinions in writing, and they
shall be preserved for reference.    It shall also be his duty
to prosecute and defend all suits for and against the
city, and to attend to such other legal business as may
be prescribed by the general council.    His salary and
term shall be fixed by the general council, not to exceed
four years."    By section 3005, Kentucky Statutes, it is
provided:    "On the first day of May of the second year
after the assessment of city taxes the receiver shall make
out a list of the bills still wholly or partly unpaid, on
lands or improvements, and furnish the list to the city at-
torney, whose duty it shall be to bring, without delay,
suits for the recovery thereof in the circuit court," etc.
This section of the charter of appellant places in the hands

of the city attorney for suit, the unpaid tax bills at a.
certain date, and directs suit to be instituted thereon by
the city attorney.    This places the duty of collecting
delinquent taxes, after a certain time, in the hands of
an officer provided by the' charter, and' also especially
provides his duty in the premises.     After the matter
comes to the city attorney as provided by the charter, the
general council can not control the matter, and can not
direct or order the dismissal of suits begun by the city
attorney under the mandate of the charter.    If it be made
to appear to the court wherein the action is pending that
the delinquent has paid the taxes due, of course a sat-
isfaction would be entered and the action dismissed, set-
tled.    But, as we have said, the general council can not
accept less than is due, and has no power or authority
to compromise for any sum less than the liability fixed
by the assessed value at the rate of tax for that year.
Likewise, we are of opinion that the city attorney could
not effect a compromise and take less than is shown to
be due from the taxpayer, neither before nor after suit
brought.    City of Louisville v. Bank of Kentucky, 174,
U. S., 412 (19 Sup. Ct., 881; 43 L. Ed., 1027).    His pow-
ers and duties are fixed by the charter provision, and when
the delinquent taxes come to him for collection the mat-
ter must be adjusted by a judgment, unless the full amount
be paid.

The merits of the case as presented by the pleadings are
not before us, as there has been no trial in the lower
court.

Having reached this conclusion, it is unnecessary to de-
cide whether the city should refund to appellee the amount
paid on the compromise, or to pass on any question raised
by the pleadings, as the same are not before us.    Where-

fore the motion to dismiss the appeal is overruled, and the judgment of the dismissal by the court below is reversed, and the cause remanded, with directions to set aside the order of dismissal, and for further proceedings consistent herewith.

Whole court sitting.

Judge DuRelle dissents.

Petition for rehearing by appellee overruled.