## No. 10,740

### Orleans

---

## STATE EX REL. RUSSEL v. CITY OF NEW ORLEANS

---

(November 15, 1926. Opinion and Decree.)

---

(*Syllabus by the Court*)

ON MOTION TO DISMISS APPEAL

1. **Louisiana Digest—Appeal—Par. 160, 222, 223.**

Act 337 of 1926 directing the payment of jury commissioners out of the Judicial Expense Fund for the Parish of Orleans having been declared constitutional, held: that the judges of the Civil District Court en banc officially and individually had an interest to appeal from the judgment so declaring.

Appeal from First City Court, Hon. Val. J. Stentz, Judge.

Action by State ex rel. Thos. A. Russell et al. against City of New Orleans et al.

There was judgment for plaintiffs and defendants appealed.

On motion to dismiss appeal, motion denied.

E. M. Heath, H. A. Moise, E. Brodtman, of New Orleans, attorneys for plaintiffs and appellees.

Joseph Carroll, F. P. Burns, of New Orleans, attorneys for defendants and appellants.

CLAIBORNE, J. This is an appeal from a judgment commanding the commissioner of finance and the treasurer of the city to pay relators, who are jury commissioners for the Criminal District Court, $212.70 out of the Judicial Expense Fund of the Parish of Orleans as part of plaintiffs' salary as jury commissioners for the Parish of Orleans for part of the month of July, 1926.

By Act 337 of 1926, Sec. 2, p. 653, it was enacted:

"Each of said (jury) commissioners shall receive a salary of $2400 per annum, payable monthly, of which $1800 per annum is to be paid out of the Judiciary Fund of the Parish of Orleans, the balance by the City of New Orleans."

The treasurer of the City of New Orleans refused to pay the jury commissioners out of the Judiciary or Judicial Fund. Whereupon the jury commissioners filed suit against him and the commissioner of finance.

Relators averred that "from 12 o'clock noon of July 28th to July 31st, 1926, both inclusive, they were entitled to receive a salary of $6.45 per day by virtue of Act 337 of 1926; that a portion of said salary is apportioned to the Judicial Expense Fund for the Parish of Orleans by virtue of Act 337 of 1926, and demand was made upon the Honorable E. K. Skinner, presiding judge of the Civil District Court for the Parish of Orleans, for a warrant to cover said paying of the salary due to

your relators, which was refused. There-upon relators demanded said salary from the city treasurer of the City of New Orleans and the said city treasurer, re-fused to pay the relators the amount here-inabove set forth, because the commis-sioner of public finance refused to approve the payroll for said amount".

Relators concluded by praying that the commissioner of public finance and the city treasurer be commanded to pay over to re-lators, Thomas A. Russell, Randolph Here-ford and Claude Mauberret the sum of $70.90 each for salary as jury commis-sioners for the Parish of Orleans.

Judgment was rendered in favor of relators, "commanding T. Semmes Walms-ley, commissioner of finance of the City of New Orleans, and William A. Daley, treasurer of the City of New Orleans, to pay to relators the sum of $212.70, or the sum of $70.90, to each out of the Judicial Expense Fund of the Parish of Orleans, be-ing the excess salary due for the month of July, 1926, as jury commissioners for the Parish of Orleans".

From this judgment Edward K. Skinner, Porter Parker, Hugh C. Cage, William H. Byrnes and Mark M. Boatner, individually, and as judges of the Civil District Court, "acting as and constituting the said court en banc", alleged that they had an in-terest in the above suit and that said in-terest might be injuriously affected by the judgment above rendered, in the following manner:

1st.   That Section 95 of Article VII of the Constitution of 1921 of this state con-stituted them judges of the Civil District Court and invested them with the sole and exclusive control of the Judicial Expense Fund of the Parish of Orleans created by said section.

2nd.   That said fund, by the same Section 95, is dedicated exclusively to the payment of certain salaries and expenses therein detailed, including the additional salary of $2500 per annum to each of petitioners.

3rd.   That said judgment orders the commissioner of finance of the City of New Orleans to pay to each of relators $70.90 out of the said Judicial Expense Fund for part of relators' salaries as jury commissioners of this parish, thus uphold-ing the validity of Act 337 of 1926.

4th..  That said Act 337 is in violation of Section 95 of the constitution of this state in that: 1st. It ignores and seeks to affect petitioners' control of said Judicial Expense Fund, and, 2nd. To appropriate the money of said fund to a purpose other than that to which said fund is dedicated by said section, and for those two reasons said Act 337 is unconstitutional and null.

Under those allegations they prayed for and obtained a suspensive appeal from said judgment to this court by virtue of Article 571-572 of the Code of Practice, which reads as follows:

"The right of appeal is given, not only to those who were parties to the cause in which a judgment has been rendered against them, but also to third persons not parties to such suit, when such third per-sons allege that they have been aggrieved by the judgment."

Article 572:  "Tutors, curators and other persons charged with the administration of another's estate may appeal for the benefit of the persons whose property they admin-ister, if they deem an appeal necessary."

In this court the relators have moved to dismiss the appeal taken by the five judges of the District Court on the grounds that:

1st.  Said judges individually or en banc have no appealable interest and have not been aggrieved by said judgment.

2nd. That if the judges of said court have any rights in this suit or in the fund, they should have asserted them by third apposition.

3rd. That there is no allegation that the judgment would affect them, or that the fund would be insufficient to pay their salaries.

4th. That the judges have no proprietary interest in the judicial fund.

It is not necessary to copy here the long Section 95 of the constitution. It is sufficient to quote the following parts material to the present issue.

"The clerk of the Civil District Court, the clerks of first and second city courts, the register of conveyances and the recorder of mortgages shall keep accurate and detailed accounts, in books to be used for that purpose, of all fees collected in their offices respectively, which shall constitute the Judicial Expense Fund of the Parish of Orleans, and the salaries of said above named officers and their deputies, as well as the expenses of their respective offices, shall be paid therefrom upon warrants signed by the presiding judge of the Civil District Court."

"The judges of the Civil District Court for the Parish of Orleans, court en banc, shall have control over the Judicial Expense Fund for the Parish of Orleans, accruing and accrued, and to this end shall fix and regulate, from time to time, the number of deputies and employees of the officers of the clerk of the Civil District Court, the city courts, register of conveyances, and recorder of mortgages of said parish and their expenses, and also shall have power to fix the tariff of costs and charges to be paid for official services, which shall not exceed in any respect the tariffs now fixed by law, in said offices, which are paid into and constitute said fund. * * *

"The judges of said court shall each receive an additional annual salary of $1000, payable monthly upon his own warrant, which shall be payable out of this fund, etc."

We think that the judges of the Civil District Court who officially have the control, accounting and distribution of the judicial fund have not only an interest but a duty to see that the fund is protected in its integrity and sufficient to meet its obligations, and that it be not diverted from the purposes to which it was dedicated or consecrated.

If they have not that right, who has it?

In the case of State ex rel. Mount, Treasurer of the City of New Orleans, 22 La. Ann. 119, a judgment had been rendered against Mount and the City of New Orleans. From this judgment the District Judge refused Mount an appeal because it did not appear to him that W. S. Mount, Treasurer, had an interest in said judgment. On an application for a mandamus to compel the judge to grant the appeal the Supreme Court said:

"It is also difficult to conceive a want of interest in W. S. Mount, treasurer of the City of New Orleans, who is proceeded against in his official capacity, to be compelled to pay large sums out of the funds confided to him as an individual. W. S. Mount, of course, had no interest; but he was not proceeded against individually. He was brought into court in his official capacity. In that capacity his interest in the funds was commensurate with the amount claimed. If he believed the judgments erroneous it was not only his right, but his duty as a faithful officer, to resort to the remedy of appeal. * * * If the principle contended for by the district judge be correct, no administrator or officer can appeal from a judgment affecting the funds confided to him, however large the amount involved and however large his fiduciary interest therein, because individually he may have no interest."

In interpreting a constitution we must give effect to its spirit as well as to its letter.

The sheriff has an action to protect property seized by him and in his official pos-

session. 1 H. D. 333 No. 26. Frank vs. Magee, 49 La. Ann. 1255, 22 South. 739; Robins vs. Brown 32 La. Ann. 430; Paul vs. Hoss. 28 La. Ann. 852; State vs. Judge, 15 La. Ann. 34; McGrew vs. Browder, 2 Mart. N. S. 17.

But the duties and functions imposed upon the judges in their control of the judicial fund are not only in the interest of the beneficiaries of the fund, but are a matter of public interest and policy, interest reipublicae. In their control of this fund the judges act as agents of the state. It is the interest of the state that the judicial fund should always and at all times be in a position to meet the purposes for which it was intended and should not be diverted to other purposes. It is a part of the judicial history of the Parish of Orleans that by Act 136 of 1880 a system of stamps was organized for the payment of judicial expenses. For reasons, which it is not necessary to recall, the fund fell short and was insufficient to pay the numerous clerks who depended upon the receipts emanating from the sale of stamps. The consequence was that these clerks sold their time at heavy discount to the detriment of the proper administration of justice and to the loss of the clerks. The state had an interest in seeing that its officers were paid. It went even so far as to exempt from seizure the salary of a clerk of a recorder's court. Moll vs. Sbisa, 51 La. Ann. 291, 25 South. 141.

As a result of this demoralization of the judicial clerks the Constitution of 1898, Article 156, abolished the stamps system and inaugurated the judicial fund. This system proved a success by which all clerks have been paid their salary promptly to the satisfaction of litigants and clerks. The Constitution of 1921 retained the system by Article 95 by which the state has placed the judicial fund under the control of the judges to guard it and protect it from invasion.

It is immaterial whether that control be exclusive or concurrent. It is sufficient that it be a right of control to give the appellants an appealable interest.

That control is not unconstitutional for being in violation of Section 3 of Article VII which provides that no function shall ever be attached to any judge of a court of record. The framers of the constitution were at liberty to consider the control of the judicial fund as a judicial function.

But Section 3 was an inhibition directed to the Legislature only. The control of the fund was vested in the judges by the constitution itself, therefore Section 95 cannot be unconstitutional.

But if these judges have no interest officially en banc in this case by virtue of Section 95 and their control of the fund, then it is clear that independently of that section they have an interest as individual judges to see that no unconstitutional invasion of the fund is made to their prejudice, for the reason that they are paid in part out of that fund. Indeed, not only the judges but each and every clerk or deputy clerk mentioned in Section 95 has a standing in court to protect his interests.

That there is no allegation or proof that if payment is made to the jury commissioners there will not remain enough to pay the judges is no answer.

The interest to protect the fund still remains. That question could only be examined on the merits. It is the absence of right to invade the fund that creates the interest. If the Act 337 remains uncontested, future attempts may be made, allured by the rich fund, to appropriate it

to foreign purposes and perhaps to create a deficiency in the fund and thus make the builders of the fund work for others who do not contribute it. "Sic vos non robis, aedificatis aves; sic oves, sic apes, sic boves", and litigants would be made to pay expenses foreign to litigation.

In the case of the City of Alexandria vs. Police Jury, 139 La. 636, 71 South. 928, quoted by appellees, the appellants had no direct pecuniary interest in the suit.

But in the case of the City Item vs. City, 51 La. Ann. 713, 25 South. 313, and others quoted there, the court decided that the taxpayer of a city had a standing to attack the legality of a corporate act. See also State vs. City of New Orleans, 50 La. Ann. 880, 24 South. 666, and State ex rel. Saunders vs. Kohnke, 109 La. 838, 33 South. 793.

Nor are the judges debarred from appealing because they could have filed an intervention. To so hold would be to deny to them the right of appeal conferred by C. P. 571, as such an objection might be made in every case. We think the two remedies are concurrent, one in default of the other.

It is therefore ordered that the motion to dismiss be denied.