. 12,538.

STATE ET REL. HENRY ORR, SR., VS. THE CITY OF NEW ORLEANS ET ALS.

Taxpayers have a standing in court to contest upon proper charges the validity of a municipal ordinance or contract executed under it, whenever its enforcement may increase the burden of taxation. Handy vs. New Orleans, 39 An. 107.

Article 51 of the Constitution, which declares that " no money shall ever be taken from the public treasury, directly or indirectly, in aid of any church, sect or denomination of religion, or in aid of any priest, preacher or teacher thereof' as such, and no preference shall ever be given to, nor any discrimination against any church, sect or creed of religion, or any form of religious faith or worship, nor shall any appropriation be made for private, charitable or benevolent purposes to any person or community; *provided* this shall not apply to the State asylums for the insane and deaf, and dumb and blind, and the Charity Hospital, and public charitable institutions conducted under State authority," refers to appropriations made by the General Assembly, and to moneys taken from the State treasury, not to appropriations made by the common councils of cities, or to moneys taken from the city treasuries.

Article 56 of the Constitution prohibits the loaning, pledging or granting of any fund of the political corporations of the State to any person or persons, association or corporation, public or private.  To the extent that any appropriation made by a city council in favor of a charitable association of the city exceeds in amount the precise legal equivalent rendered by the particular institution which is to receive it for the support of just such persons as the city itself would be legally chargeable with, the appropriation evidences a donation and a gift, and by reason of that fact it is beyond the power of the council to make it under Art. 56 of the Constitution.  Appropriations to charitable associations granted from a general sense by the council of the laudable objects and purposes of those institution,'but having no fixed, certain, established consideration for the same, are at best remunerative donations for possible anticipated future benefits, and not being based upon contract express or implied are *ultra vires*.

State ex rel. Orr, Sr., vs. City et als.

The twenty-first and twenty-fourth sections of the charter of the city of New Orleans, defining the duties of the city comptroller and treasurer, did not contemplate that an appropriation by the city council should *per se* justify the withdrawal of the amount of the same from the city treasurer. They obviously intended that each claim presented under an appropriation should be subjected to examination and auditing, and should be based upon affirmatively shown exact legal consideration.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor, J.*

*John C. Wickliffe* and *Arthur H. Brown* for Plaintiff, Appellant.

*Charles J. Théard, Charles S. Rice, Anthony Sambola, J. St. Paul, Dinkelspiel & Hart, James J. McLoughlin,* Assistant City Attorney; *Sam'l L. Gilmore,* City Attorney; *J. Madison Vance (Frank McGloin* of Counsel) for Defendants, Appellees.

Argued and submitted December 18, 1897.
Opinion handed down March 7, 1898.
Rehearing refusing May 2, 1898.

The opinion of the court was delivered by

NICHOLLS, C. J.   In a petition filed by him in the Civil District Court, on November 30, 1896, relator averred that he was a citizen and taxpayer of the city of New Orleans, and the father of two children of school age, who were dependent upon the public schools of that city for an education, and who were attending said schools. That through lack of sufficient appropriation of public money from the public treasury of said city by the City Council of New Orleans to the school fund of said city for the year 1896, the School Board of said city had declared that it would be necessary to close the said public schools during the month of November, 1896. That in the budget of expenditures of the city of New Orleans for the year 1896, the City Council of the city of New Orleans appropriated and ordered taken from the public treasury of the city of New Orleans the sum of forty thousand two hundred dollars, and same paid to sundry private, charitable and benevolent institutions, to-wit: Evangelical Lutheran Orphan Asylum (Bethel); Protestant Or-

56

phans' Home, St. Vincent's Orphan Asylum, Wet Nurses, St. Mary's Orphan Boys' Asylum, House of Good Shepherd, German Protestant Orphan Asylum, Touro Infirmary, Faith Home for Aged .Widows, Lafon's Old Folks' Home, St. Vincent's Asylum, New Orleans Female Orphan Asylum, Female Orphan Asylum of the Immaculate Conception, German Protestant Home for the Aged and Infirm, Jewish Home, Home for Incurables, Maison Hospitaliere, St. Alphonsus Asylum, St. Vincent's Half Orphan Asylum, Louisiana Asylum, St. Joseph's Boys and Girls' Asylum, Holy Family Asylum, St. Joseph's Asyium of the Little Sisters of the Poor, Protestont Episcopal Children's Home, Eye, Ear, Nose and Throat Hospital, Convalescent's Home, Louisiana Freedman's Asylum, St. Vincent de Paul's Society, Conference of St. Joseph and Immaculate Conception, St. Mary's Asylum of Little Sisters of the Poor and the Carmelite Nuns, which said sums in various amounts were ordered to be paid to private persons and communities as members and representatives of various churches, sects and denominations of religion, for an itemized statement of which reference was made to the said budget of 1896, adopted by the said City Council on the fourteenth day of January, 1896, and to the resolution of apportionment thereunder, adopted by said council or its committee on the fourth day of February, 1896, both of which were made part of the petition. That the existing City Council through its Committee on Budget and Assessment had prepared a budget of expenditures of the public moneys and of appropriations from the public treasury of the city of New Orleans fo the year 1897, which budget had been published in the newspapers of the city of New Orleans; said budget having been prepared and provisionally adopted by said committee on the third day of December, 1896, which budget was made part of the petition.

That by said budget it was proposed to appropriate and take from the treasury of the city of New Orleans a sum of money largely in excess of the sum of twenty-seven thousand dollars for private, charitable and benevolent purposes in various amounts to sundry private persons and communities as representatives of and in aid of sundry churches, sects and denominations of religion; that said proposed budget would be adopted by the council and said sums taken from the treasury for said purposes unless the said council and officers were restrained from so doing by due process and orders of

State ex rel. Orr, Sr., vs. City et als.

court. That none of the appropriations referred to either in the budget of 1896 or that of 1897 were for the State Asylums for the Insane, Deaf, Dumb or Blind, nor for any charity hospital nor other charitable institution or institutions conducted under State or any other public authority. That all of said appropriations and proposed appropriations were illegal, contrary to law, and beyond the power of the City Council to make or to have made.

That of the appropriation of 1896 a large portion had been paid from the treasury by the City Treasurer on the warrant of the comptroller and the amounts remaining would be so paid out unless said officers were prevented from doing so by law. That if said balance were paid out under the budget of 1896 there would not be sufficient money in the treasury to permit the public schools to remain open for the full time during the year prescribed by law and relator's children would be prevented from attending same during the time they are closed. That if the appropriations proposed in the budget of 1897 were made and the money taken from the treasury there would not be left money enough therein to keep open the public schools during the year 1897 for the full term prescribed by law and custom in said city, and relator's children would be prevented, as stated, from attending school, and thereby prevented from obtaining the education at the public schools which was the right of every American citizen and citizen of the State of Louisiana. That relator's interest in the subject matter was largely in excess of two thousand dollars. In view of the premises, relator prayed for citation upon the mayor—the treasurer and comptroller of the city and also the common council; that relator have judgment against them decreeing all of said appropriations null and void, and prohibiting any further payment of the money appropriated by the budget of 1896 to the said private, charitable and benevolent purposes to said purposes and communities, and prohibiting the council from appropriating any money for said purposes out of the treasury for the year 1897 as proposed, or any subsequent year, and that the mayor be prohibited from approving, and forbidden to approve any ordinance making such appropriation or appropriations; that the comptroller be forbidden from drawing and the treasurer from paying any warrant thereunder, or any money under color of appropriation for any private, charitable or benevolent purpose whatever, to any person or community or in aid of any church, sect or denomination of religion whatever, and for

all writs and orders necessary to enforce the judgment to that effect.

. Defendants, through their counsel, filed an exception of no cause of action, and prayed that the suit be dismissed. This exception was referred to the merits.

On the 9th of January, 1897, relator filed a supplemental petition, in which he alleged that since the filing of his petition, the appropriations for 1897, which had been referred to as proposed appropriations, had been, in fact, made in the budget of 1897, and had been approved by the mayor, and were made to the persons and communities named in the supplemental petition for the amounts therein stated. Relator substantially reiterated the allegations of his original petition as to the illegal character of the same and set forth *de novo* his grounds of complaint. He averred that payments made out of the appropriations for the purposes stated were illegal and without warrant of law. He prayed that they be so decreed, and that the officials participating therein be decreed liable for the same and ordered to pay the same into the city treasury. He reiterated the prayer of his original petition, adding thereto relief in consonance with the allegations of the supplemental petition.

The defendants answered under benefit of their exception. They pleaded, first, the general issue. They then admitted that the city of New Orleans had made certain appropriations for the years 1896 and 1897 to the institutions named in plaintiff's petition, but they averred that said appropriations were made strictly in accordance with law.

The Protestant Orphan Home, the Association for the Relief of Jewish Widows and Orphans, the German Evangelical Lutheran Bethlehem Orphan Association, the Touro Infirmary and the New Orleans Convalescent Home, parties in whose behalf and for whose benefit, among other, appropriations had been made in the budgets of 1896 and 1897, intervened in the suit to join the defendants and protect their interests under the appropriations. Their petitions of intervention were substantially alike. They averred that they were each an incorporated charity under the laws of the State and owners of an asylum for the care, nourishment and protection of the indigent sick and orphans; that they were possessed of no adequate means of support and depended very largely upon contributions made by charitable persons and appropriations made by the city of New

Orleans, similar to those contained in the budget of 1897. That the city made use of their institution for the care and support of their indigents and orphans. That said contributions and appropriations were absolutely necessary for the charitable uses for which the institutions were respectively founded. That the appropriations attacked in nowise contravened the charter of the city of New Orleans; were not *ultra vires*, but were lawful and proper under the Constitution and laws of the State. That relator disclosed no inferest for the relief prayed for and that the court was without jurisdiction *ratione materiæ*.

The District Court after trial rendered judgment in favor of defendants and intervenors, refusing the injunction and *mandamus* prayed for, and dismissing the suit.

Plaintiff. appealed.

---

The opinion of the court was delivered by

NICHOLLS, C. J. In Handy *et al.* vs. The City of New Orleans *et al.*, 39 An. 107, this court held that taxpayers have a standing in court to contest, upon proper charges, the validity of a municipal ordinance and contract executed under it, whenever its enforcement may increase the burden of taxation. That a petition of taxpayers discloses a cause of action which charges that a municipal corporation has passed an ordinance in excess of its powers and in violation of prohibitory provisions in its charter. Under the authority of that decision the District Court properly overruled the exception of no cause of action filed by the defendants. The petition in this case not only contained averments of the character referred to, but specially charged that the ordinances attacked were violative of the State Constitution.

Relator's principal attack on the ordinances of the city is based upon the provisions of Art. 51 of the Constitution, which declares that "no money shall ever be taken from the public treasury directly or indirectly, in aid of any church, sect or denomination of religion, or in aid of any priest, preacher, minister or teacher thereof as such, and no preference shall ever be given to, nor any discrimination made against any church, sect or creed of religion, or any form of religious faith or worship; nor shall any appropriation be made for private, charitable or benevolent purposes to any person or

community; provided this shall not apply to the State asylums for the insane and deaf, dumb and blind, and the charity hospitals and public charitable institutions conducted under State authority."

This article is found under the heading of "*Limitations upon Legislative Powers*," and is evidently directed against taking money out of the State Treasury and of prohibiting the General Assembly from itself making appropriation for private, charitable or benevolent purposes other than for those specially enumerated and permitted.

As the acts complained of are not those of the General Assembly, but of the city of New Orleans, we are called on to comment upon that particular article of the Constitution only in so far as relator bases upon it the contention that a prohibition upon the powers of the Legislature itself carries with it as a necessary and unavoidable consequence a similar prohibition upon all the subordinate or inferior political organizations in the State. He argues that all the powers of such bodies are derived from the General Assembly, and that the latter can not confer upon its creatures powers which it can not exercise itself. This argument rests upon a misconception of the original powers of the General Assembly and the effect upon them of constitutional limitations. It has been repeatedly held that unlike the Congress of the United States, which must find affirmative authority for its action, the Legislature of a State is unlimited in its powers, except in so far as the latter are restricted within certain limitations by constitutional provisions.

It has also been repeatedly held that the scope of these restrictions is not to be extended; that they are not to be enlarged by construction beyond their terms. The decision in Hughes vs. Murdock, 45 An. 935, to that effect merely announces a well recognized doctrine. Arts. 44 and 45 of the Constitution afford examples of cases where the limitations upon the powers of the General Assembly are made to extend not only to the direct actions of the Legislature itself, but to its powers of delegation of authority to others.

The position taken that there is manifest inconsistency between prohibiting the Legislature from taking action upon some particular subject and yet authorizing it either to permit subordinate corporations to do so, or authorizing it to charge them with the duty of doing so, is not logically correct. For instance: there may be certain duties, the performance of which from their character could be and should be exacted in certain localities for the public good, the

expenses of which should be made to be contributed to by the people of that special locality. While the people of the State at large might have an interest in seeing those duties performed and they should through the Legislature have supervision and control over them to some extent, it might be very unfair and improper to cast a general burden in respect to the same upon the whole people. Different localities should be made to bear exclusively the burden to the extent that they were specially and directly concerned in the subject-matter.

We would see no inconsistency in the Constitution's forbidding the Legislature from appropriating the State's money for the care of the indigent insane in the different parishes, and yet either making it obligatory upon it to charge the various parishes with the duty of properly providing for them or leaving that matter open for legislative discretionary action. The duty of providing for the indigent insane would still remain properly a matter of public concern; the Constitution would simply have shifted the burden of the duty from the State at large to the people of the particular places where those unfortunate persons should chance to be found.

Deciding, however, that the provisions of Art. 51 of the Constitution do not extend to this case leaves for examination how far the ordinances of the city are chargeable with illegality under Art. 56 of that instrument and under its own charter. It is best that no technical obstacle be thrown in the way of the solution of that question at this time. It is subject to be presented at any moment, and it should be disposed of at once, to the end that the Constitutional Convention, now in session, may take such action in the matter as to it may be deemed right and to the best interests of the people of the State.

Article 56 of the Constitution declares that " the *funds*, credit, property, or things of value of the State, or of any *political corporation thereof*, shall not be loaned, pledged or granted to or for any person or persons, association or corporation, public or private; nor shall the State or any political corporation purchase or subscribe to the capital or stock of any corporation or association whatever, or for any private enterprise. Nor shall the State, nor any political corporation thereof assume the liabilities of any political, municipal, parochial, private or other corporation or association whatsoever; nor shall the State undertake to carry on the business of any such

corporation or association or become a part owner therein; provided the State, through the General Assembly, shall have power to grant the right of way through its public lands to any railroad or canal.''

No mention is made in this atticle of appropriations which might be sought to be made for private, charitable or benevolent purposes, nor is the prohibition of the article aimed at grants as being ''directly or indirectly in aid of any church, sect or denomination of religion, or in aid of any priest, preacher, minister or teacher thereof as such.''

The prohibition against grants is as broad as words can make it, and is totally independent of the object to which the grant when made would be applied. The article is found in the Constitution (as is Art. 51), under the heading of ''Limitations of Legislative Powers,'' but, unlike the latter, its terms extend expressly to a prohibition of the ''granting of the funds of any political corporation of the State to any person or persons, association or corporation, public or private.'' The granting of the funds of the political corporations to private persons or corporations being itself prohibited independently of the body attempting to make the grant, or to permit the same to be made, removes from the General Assembly the power through any delegation from it to confer authority on parishes or cities in the State to make them. Grants of parishes or cities of that character based on such delegation would be null and void.

The article prohibits the loaning, pledging or granting of any funds of the political corporations of the State to any person or persons, association or corporation, public or private.

It must be conceded that the institutions in whose behalf the appropriations attacked were made are private corporations. The public authorities have no control or authority over them.

The question remains whether the ordinances attacked evidence ''grants'' of the funds of the city of New Orleans.

Webster defines the verb ''to grant'' as signifying:

1. To give over—to make conveyance of—to give the possession or title of—usually in answer to petition—to convey.

2. To confer or bestow with or without compensation, particularly in answer to prayer or request.

3. To admit as true when disputed or not satisfactorily proved, to yield belief to, to allow to yield, to concede, synonyms. To give,

confer, bestow, convey, transfer, admit, allow, concede. And the word " grant " as a noun as signifying:

1. The act of granting—a bestowing or conferring; concession, admission of something as true.

2. The thing granted or bestowed, a gift, a boon.

3. A transfer of property by deed or writing, especially an appropriation or conveyance made by the government; as a grant of land.

It is argued that the ordinances of the city of New Orleans are not grants of the funds of the city; that they are not gifts; that the city stands charged with the duty of supporting its own infirm, sick and disabled paupers; that the institutions in question have taken upon themselves that obligation; that they have discharged and will continue to discharge the same; that in so doing they have relieved the city and will continue to relieve the city from the pecuniary obgliations which but for them it would have itself to incur; that the city has received and will receive a *quid pro quo* for the amounts appropriated; that the city has the legal power to discharge its duties through agencies other than itself or by contracts with other parties.

Relator replies that though the duty of municipal corporations to support their own infirm, sick and disabled paupers is recognized in Art. 163 of the Constitution, that article is not self-executing; that it directs the General Assembly to make such duty obligatory, but that that body has as yet taken no action in that direction. We are not aware of any action taken by the General Assembly under the requirements of Art. 163 of the Constitution other than Act No. 42 of 1890, which relates only to police juries. We think that the General Assembly construed the provisions of that article as to its obligation of taking affirmative action as applying only to parishes; that the second clause of the article itself affirmatively made it the duty of municipal corporations to support the indigent infirm, sick and disabled persons within their borders.

Whether this was its view of the matter or not, whether it was a correct view or not, we need not inquire, for we are not called upon in this case to say whether legal proceedings could be legally taken out to coerce the city to make provision for such persons, but whether when they had done so their action would be unauthorized in the absence of a statute of the State making it obligatory upon them to do so. We have no hesitation that if the only attack made

upon the action of the city would have been the absence of such a statute, it would have been utterly groundless.

There can be no question as to the duty of cities to support indigent sick, disabled and infirm persons within their borders, but the question is how and under what circumstances and conditions are they to do so. Had the city built or leased premises having this object in view, and placed employees of its own over them and made provision through ordinances for the payment of the expenses incurred in so doing, no one, we suppose, would question the validity of such ordinances by reason of a want of power in the city to pass them.

Had the city made express contracts either with individuals or with private corporations by which the latter would have come under a well defined civil, legal tie to perform such duties for the city, the officers of the city having legal power to exact performance according to the terms of the contract and to hold such parties liable for breach of the same, and had the city passed ordinances appropriating money to carry out its obligations toward the other contracting parties under such contracts, and had the validity of such appropriations been submitted to us, a very different question would have been presented from that actually before the court.

As matters stand we find a case where there exists not only no contractual relations, either express or implied, between the city and the various corporations on whose behalf the ordinances attacked have been made, but none between those institutions and the indigent sick, poor or disabled of New Orleans. Neither the city nor those indigent sick or disabled persons themselves would have a right of action to coerce any one of them into receiving or supporting them; their action in that matter would be purely and exclusively within their own control. Their boards of directors and not the city officials would decide who should be received and supported, how many should be so supported and for how long. On the other hand none of these institutions by virtue of the fact that they had received and supported indigent orphans or indigent infirm men and women, and that the city had made appropriations in their behalf, would have such a vested right in such appropriations as to prevent a repeal of the ordinances making them or to give a right of action against the city.

We do not understand that the city pretends to have any legal sup-

ervision or control over these institutions. We do not understand the amount of the appropriations to the different institutions to be graded upon any fixed established relation between such amounts and service which could be legally charged for by each as based upon a precise legal equivalent consideration received. We understand the council to exercise its own judgment as to how much each institution should be granted and to exact no accounting for the amounts received. That the appropriations are made in bulk and drawn out in bulk; no specific vouchers being given as to how the sums received had been or would be applied. Under such circumstances, the appropriations, though based upon a general sense by the council of the laudable objects and purposes of the institutions have really no fixed certain established consideration for the same. There may be or there may not be a consideration for some of them, and that consideration may be or it may not be an equivalent for the moneys received. Those moneys at the best would be received by way of remunerative donations, for possible anticipated future benefits, not by reason of contract, express or implied. Whether or not any particular appropriation was in support of a real or a remunerative donation would rest in doubt, and for determination would have to be tested in each case by extrinsic evidence. To the extent, at least, that any given appropriation exceeded in amount the precise legal equivalent rendered by the particular institution receiving it for the support of just such persons as the city itself would be legally chargeable with, the ordinance would evidence a gift and a donation to it, and by reason of that fact, would be beyond the power of the council to make. Coates vs. Campbell, 37 Minn. 498. There are no fixed established conditions attached by the ordinances as conditions precedent either to the earning of or the payment of the moneys to the different institutions. There is no attempted or visible check upon either the council, the finance committee, the comptroller or the treasurer. The right of payment seems to be made to rest simply upon the fact of appropriation itself, nothing more. There seems to be nothing to guide either the comptroller, the finance committee or the treasurer in approving or auditing claims advanced under the ordinances. We do not think that ordinances of that character are sustainable, or that such ordinances were in the contemplation of the General Assembly in framing the charter of the city of New Orleans. We think the twenty-first and twenty-fourth sec-

tions of the charter, defining the duties of the comptroller and the treasurer contemplated something more than an appropriation by the council to justify a withdrawal of the amount of the same from the city treasury. They obviously intended that each claim should be subjected to examination and auditing and should be based upon affirmatively shown, exact legal consideration. Institution for the Education of the Mute and Blind vs. John M. Henderson, State Auditor. Colorado Supreme Court, November, 1882. 18 Vol. Lawyer's Annotated Reports, 399, 400. Coates vs. Campbell, 37 Minn. 498. In the discussion of questions of law we are not authorized to act upon our own ideas of what should or should not be either in the Constitution or in the statutes of the State touching matters of policy or expediency. We have to take matters as we find them fixed and determined by those whose province it is under the distribution of the powers of the State to deal with them. The trouble in this case arises not so much from the fact that estimates were made in the annual budget for the application of moneys for the support of the poor under the heading of " Public Charities " as that through the method adopted by the common council payments of the amounts specified in the ordinances are authorized to be drawn by the various institutions themselves by and through the force of the ordinances and the appropriations themselves; freed from the necessity of establishing affirmatively before the finance committee, the comptroller and the treasurer, that the amounts about to be received were based, not upon a grant, but upon a valid, legal, existing and equivalent consideration. We do not know from the record what course has been followed by those officers in the execution of the ordinances; the methods followed for payment are not attacked.

In the Cook County case (125 Illinois 540) the Supreme Court of Illinois, referring to the necessity it was under of pronouncing a judgment which was in evident opposition to its sympathies and wishes, setting aside an appropriation made in aid of parties engaged in most praiseworthy work, but under circumstances prohibited by the constitution, said:

" They are engaged in the best and holiest of all works, that of reforming and caring for the unfortunate. We agree with counsel for appellee that they do their work faithfully and well. It is so shown by the proof. It is not for us to discuss the wisdom or unwisdom of this prohibition. There it is, couched in terms so emphatic

that it can not fail to challenge attention. Any scheme, even though hallowed by the blessing of the church, that surges against the will of the people as crystallized into their organic law must break in pieces as breaks the foam of the sea against the rock on the shore.''

Our duty, under similar circumstances, is no less imperative than that imposed upon the Supreme Court of our sister State.

For the reasons herein assigned it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the ordinances of the city of New Orleans, making appropriation in favor of any charitable or benevolent institution of the city of New Orleans, under and by the force of which appropriations themselves the institutions in whose favor they are made can draw out from the treasury of the city the funds so appropriated, are illegal and unconstitutional, and the finance committee and chairman of the finance committee are enjoined and inhibited from endorsing or approving any requisition, claim or demand for payment of said appropriation or any part thereof by force simply of the appropriations themselves, and the comptroller of the city of New Orleans is hereby enjoined and inhibited from warranting upon the treasurer for the payment of any portion of said appropriations, and the treasurer enjoined and inhibited from paying any portion of said appropriations simply by force and by reason of the appropriations themselves.

MILLER, BREAUX, J. J., dissenting in separate opinions.