ODOM, Justice.
 

 On May 26, 1931, the commission council of the city of Shreveport attempted to appropriate, by motion, certain funds to pay or partly pay a “service officer,” whose duties, according to agreed statement of facts, were:
 

 “To intelligently advise and assist all ex-service men, their families and dependents, without discrimination, within the City of Shreveport, in securing for them the compensation, insurance, and other benefits to which they may be entitled under the laws of the United States and the regulations of the Veterans’ Bureau, which accrue to them as a consequence of military service.”
 

 Plaintiff, who is a resident and taxpayer of the city, brought the present suit to enjoin the city from using public funds for such purpose on the grounds:
 

 First. That the action is ultra vires of the powers of the commission council.
 

 Second. That the attempted action is in. violation of section 12, art. 4, of the Constitution of Louisiana.
 

 Third. That it is in violation of section 5, art. 10, of the Constitution.
 

 It was also alleged that the expenditure of this sum would bring no corresponding return to the city of Shreveport, and that the appropriation was made without notice or publication and without providing, at the same time and in an ordinance creating the debt, a means of paying the same, and that the amount was not included in the budget of expenses for that year.
 

 The city filed exceptions of no cause and no right of action, which were overruled. In its answer the city denied the allegations of the petition. There was judgment for plaintiff, and the city appealed.
 

 1. The trial judge correctly holds in a most able and exhaustive written opinion that if the expenditure of the public funds of the city for the payment of a “service officer” is to be approved, justification for it must be found in the city' charter. On this point he says:
 

 “Taking up now the first ground of attack, namely, “That the action is ultra vires of the Commission Council, for .the reason that municipalities have no authority to embark in the activity of supporting a ‘service officer,’ it is only necessary to say that a reading of the Charter of the City of Shreveport, which is Act No. 158 of 1898, together with Act No. 220 of 1912, which is an amendment to the Charter, discloses no provision delegating to
 
 *49
 
 the City authorities of the City of Shreveport any power which could be stretched to cover the appropriation herein attacked. Act No. 155 of 1926, which amends section 5 of Act No. 302 of 1910, being the Commission Form of Government Act, provides that the Commission Council of the City of Shreveport may elect certain named officers ‘and such other officers and assistants as shall, in the judgment of the mayor and couneilmen, be necessary to the proper and efficient conduct of the affairs of the City.’
 

 “The above quoted provision, however, means no more and no less than that municipalities may provide for such officers as they properly may have, to engage in those duties which municipalities have the power under the law to perform. This section, however, has never been construed by the Supreme Court of Louisiana insofar as we find, but it certainly cannot be seriously contended that the authority above referred to could have the effect of changing or superseding the settled jurisprudence and law governing the proper functions of municipalities. In other words, the functions of a Service Officer are not an affair of the city, and certainly cannot be made so by the simple fiat of the Commission Council.” ■
 

 He also quotes from Judge Dillon’s work on Municipal Corporations, classifying the powers possessed by municipalities, as follows:
 

 “(1) Those granted in express words, (2) those necessarily or fairly implied or incident to the powers expressly granted, and (3) those essential to the declared offices and purposes of the corporation, not simply convenient but indispensible.”
 

 He then says':
 

 “This Service Officer which it is proposed ‘to partly pay’ would have no duties to perform to the government of the City of Shreveport, as we understand the facts set out in the Stipulation. This Service Officer would be a claim agent whose duties it would be to collect insurance and other benefits granted ex-service men by the United States Government or any of the state governments. The duties to be performed by the Service Officer will not be duties of a public nature, but such duties as' an attorney would render a private client.
 

 “ ‘In reading the city charter for ascertaining whether it confers this power we are' to bear in mind that grants of power to a city beyond those necessary for its properly functioning as a municipality are construed strictly, and that any reasonable doubt is resolved against the corporation.’ 28 Cyc. 265.
 

 “ ‘A municipal corporation possesses and can exercise the following powers, and no others : First, those granted in ^express words; second, those necessarily or fairly implied in or incident to the powers expressly granted, and, third, those essential to the declared object and purpose of the corporation, not simply convenient but indispensible,’ City of Independence v. Cleveland, 167 Mo. 384, 67 S. W. 216, and cases cited.
 

 “ ‘All fair and reasonable doubts concerning the existence of a power are to be resolved against a municipal corporation, and the power denied.’ City of Savanna v. Robinson, 81 Ill. App. 471; Thomas v. City of Grand Junction, 13 Colo. App. 80, 56 P. 665; and cases cited.”
 

 
 *51
 
 We subscribe to the views thus expressed.
 

 Section 12, art. 4, of the Constitution provides that:
 

 “The funds, credit, property or things of value of the State
 
 or of any political corporation thereof,
 
 shall not be loaned, pledged or
 
 granted to or far a/ny person or persons,
 
 association or corporation, public or private.”
 

 Section 5, art. 10, of the Constitution provides that; ■
 

 “Parochial and municipal corporations and public boards may exercise the power of taxation, subject to such limitations as may be elsewhere provided in this Constitution,
 
 under authority granted to them by the Legislature
 
 for parish,
 
 municipal and local purposes, strictly public in their nature.”
 
 (Italics ours.)
 

 The funds with which the city proposes to pay this service officer belong to it in its capacity as a political corporation of the state. Those funds arose from the imposition of taxes in some form, and under the plain terms of the Constitution they cannot be granted to or in favor of any person or persons because such corporations may levy taxes only for “municipal and local purposes, strictly public in their nature.”
 

 The so-called “service officer” whom the city proposes to pay from its public funds is to have no connection with the city government. He is to perform no duty connected with or in furtherance of any governmental function of the municipality. The work which is to be done is in no sense germane to the objects and purposes for which the city was incorporated.
 

 The services which he is to render are for the .benefit of a designated group or class of citizens in whom the city, as a political corporation acting under its delegated powers, has no more interest than it has in any other group or class having no special call upon the city for assistance.
 

 Counsel for the city and his associates point out that it is admitted in the agreed statement of facts that some among the ex-service men and their dependents of the city have not the means with which to properly prosecute their claims before the government and the Veterans’ Bureau. This being true, they argue that this expenditure is justified on the ground that it is for charitable purposes.
 

 It cannot be denied thát municipal corporations not only have the inherent power (some have express power), but that it is their duty, to provide for their indigent inhabitants. State ex rel. Orr v. City of New Orleans, 50 La. Ann. 880, 24 So. 666. As was said in Union Ice & Coal Co. v. Town of Ruston, 135 La. 898, 926, 66 So. 262, 272, L. R. A. 1915B, 859, Ann. Cas. 1916C, 1274:
 

 “For the support of its paupers and indigent sick, the municipality may go as deeply as the necessity of the case may require into the pockets of its large taxpayers.”
 

 But the appropriation and proposed expenditure in the case at.bar are not for such purposes. As to this particular point the district judge says: ,
 

 “Furthermore, the proposed Service Officer is not for the benefit of the indigent or necessitous of the City of Shreveport generally, and not even for the benefit alone of indigent and necessitous ex-service men, but it is for the benefit of a specified class of citizens, namely, ex-service men and their dependents, with
 
 *53
 
 out any regard whatever as to whether such ex-service men are in indigent or in necessitous circumstances. In this case the services of the Service Officer sought to be created would be clearly as available to an ex-service man who was worth a million dollars as to one who had nothing at all.”
 

 In a supplemental brief filed by counsel for the city, it is argued that the city has the implied authority under its police power to “take care of its’ sick and injured, or otherwise, to appropriate funds to employ a service officer of this nature.”
 

 Its implied power to Taise and expend money to take care of its sick and indigent is without question. But, as stated by the district judge, this appropriation is not for that purpose.
 

 As to an appropriation to aid ex-service men, counsel liken such expenditures to the establishment of pensions for disabled municipal officers and they cite 19 R. C. L. 726 under the general heading “Municipal Corporations,” subtitle “Pensions,” as follows:
 

 “The establishment of a pension system for municipal officers and employees, whereby, after serving a certain number of years or upon disablement from injuries received in the course of their duties, they are retired from active service and paid in certain proportion of their salaries for the remainder of their lives is not an unconstitutional disposition of public moneys for private use when applied to officers and employees who have entered or continued in the service after the system went into effect.”
 

 Clearly this text and the authorities cited in support of it have no application to a case of this kind. The authority quoted goes further and states the reason why such an expenditure is authorized. It is stated on page 727:
 

 “The pension in such a case is not a gratuity, but a part-of the stipulated compensation. A judiciously administered pension fund is doubtless a potent agency in securing and retaining the services of the most faithful and efficient class of men connected with those arms of the municipal service in which every property owner and resident of the city is most vitally interested. Reasons in support of this proposition need not be stated in detail.”
 

 The payment of such pensions is in connection with and in furtherance of governmental functions. The principle involved has no application to the case presently before us.
 

 Counsel also cite cases from other jurisdictions which they contend support the proposition that municipal corporations may adopt ordinances providing for the collection of taxes for bonuses, pensions, etc., to be paid veterans of the World War. If the authorities cited support that general proposition, they might be persuasive, because if they may levy taxes for that purpose, it might be 'argued with some show of reason that the municipalities may expend funds already collected to assist the veterans. But as a matter of fact the cited eases are not in point.
 

 In Brodhead v. Milwaukee, 19 Wis. 624, 88 Am. Dec. 711 (cited in case note 7 A. L. R. 1646), the question involved was whether the Legislature of Wisconsin had authority to delegate to a municipality power to levy a tax
 
 *55
 
 to pay bounties to volunteers who had previously enlisted in the war between the states. It was held that the Legislature had power to delegate such authority. But the question involved was not whether a municipality had such authority under its charter, but whether the Legislature had power to delegate such authority.
 

 In State
 
 v.
 
 Johnson, 170 Wis. 218, 175 N. W. 589, 593, 7 A. L. R. 1617, decided in 1919, the constitutionality of an act Of the Legislature known as the' “Soldiers’ Bonus Act” was involved. The act provided that a tax might be levied'by the state to pay bonuses'to soldiers, nurses, etc., “as a token of appreciation of the character and spirit of ‘their patriotic service.” The act was held to be constitutional. The right of municipalities to levy such tax was not involved.
 

 The case of State of Washington ex rel. Hart v. Clausen, 113 Wash. 570, 194 P. 793, 13 A. L. R. 580, involved the same question and the ruling was the same.
 

 In 26 R. C. L. 68, under the general heading “Taxation,” it is said that after the danger of war is past “the power of the state to express its gratitude to the men who offered their lives in its behalf is not lost and the public money can be constitutionally expended for the piirpose of promoting the spirit of loyalty and patriotism and of encouraging similar sacrifices in the future.”
 

 This has reference only to the- question whether the state has such authority. Municipalities are not mentioned.
 

 In a case note found in 7 A. L. R. 1656, several cases are cited which seem to support the general proposition that, “if the state may pay bounties to soldiers it may authorize counties, cities, or towns to do so,” and, “if the legislature can raise money for bounties to soldiers, there seems to be no good reason why it cannot delegate that authority to the several towns, within their respective limits.”
 

 Conceding therefore, without holding, that the Legislature of this state might, if.it saw fit, delegate to municipalities the power and •authority to use public funds to aid ex-service men, the fact is that in 1931 when this appropriation by the city of Shreveport was made, no such' authority had been delegated either to it or- any other municipality.. Since that time, the Legislature has done so by Act No. 182 of 1932, and plaintiff asks that- we pass upon the constitutionality of that act. We decline to dó so for reasons so apparent that they need not be stated.
 

 Referring again to the police powers of municipalities under which counsel for the city argue that this appropriation is legal, it-must be conceded that such powers are broad and cover a wide range of subjects. But these powers have limitations. They cannot be extended beyond that which concerns the common welfare of the public generally. Municipalities cannot, under the guise of acting under their police powers, use public funds to aid a designated group or class of its inhabitants who have no inherent right to such aid.
 

 For the reasons assigned, the judgment appealed from is affirmed.