** PART II **
THE HARSH RESULTS REACHED BY THE APPLICATION OF THE FOREGOING RULES WERE LESSENED SOMEWHAT BY LATER CASES WHEREIN THE OKLAHOMA SUPREME COURT BROADENED THE DEFINITION OF PUBLIC PURPOSE AND RELIED MORE HEAVILY ON TIME-HONORED PRINCIPLES REQUIRING GREAT DEFERENCE TO LEGISLATIVE JUDGMENT, A PRESUMPTION OF VALIDITY AS TO LEGISLATIVE ENACTMENTS AND PROHIBITING A FINDING OF UNCONSTITUTIONALITY UNLESS THE STATUTE IS CLEARLY UNCONSTITUTIONAL.
THE COURT SPECIFICALLY INCORPORATED ALL OF THESE PRINCIPLES AND BROADENED THE DEFINITION OF PUBLIC PURPOSE IN WAY V. GRAND LAKE ASSOCIATION. INC.. ET AL., 635 P.2D 1010 (OKLA.1981), NOW THE SEMINAL CASE IN THIS AREA. IN THAT CASE, THE COURT WAS ASKED TO DECIDE WHETHER THE APPROPRIATION OF PUBLIC MONIES TO TOURISM AND THEN TO FIFTEEN SPECIFICALLY NAMED PRIVATE ORGANIZATIONS WAS VIOLATIVE OF ARTICLE X, SECTION 14/ARTICLE X, SECTION 15. THE ATTORNEY GENERAL, IN A.G. OPIN. NO. 80-165-B, HAD RULED SUCH APPROPRIATIONS TO BE CONSTITUTIONALLY INVALID. THAT OPINION RELIED ON THE RULE IN VETTE AND VETERANS AND SAID THE SAME ACT WHICH WAS LATER CONSIDERED IN WAY "APPROPRIATED AND AUTHORIZED TO BE PAID PUBLIC FUNDS FOR USE BY A NONPROFIT CORPORATION FOR PURPOSES OVER WHICH THE STATE HAS NO CONTROL."
THE COURT IN WAY, HOWEVER, DISTINGUISHED VETTE AND VETERANS FROM THE CASE AT BAR BECAUSE OF THE GOVERNMENT CONTROLS WHICH WERE RETAINED OVER THE APPROPRIATIONS. IT CHOSE INSTEAD TO RELY ON THEIR PAST DECISIONS WHICH HAD SAID THAT THE TERM "PUBLIC PURPOSE" WAS NOT TO BE CONSTRUED IN A NARROW AND RESTRICTED SENSE AND THAT IT WAS WITHIN THE LEGISLATURE'S PROVINCE TO DECIDE WHAT WAS A PUBLIC PURPOSE. ALSO, THE COURT FURTHER DEFINED WHAT EXACTLY IT CONSIDERED TO BE A PUBLIC PURPOSE:
 THE TERM "PUBLIC PURPOSE" AS USED IN A CONSTITUTIONAL PROVISION THAT TAXES SHALL BE LEVIED FOR PUBLIC PURPOSES ONLY, IS SYNONYMOUS WITH `GOVERNMENTAL PURPOSE.' IT MEANS A PURPOSE AFFECTING THE INHABITANTS OF THE STATE OR TAXING DISTRICT AS A COMMUNITY, AND NOT MERELY AS INDIVIDUALS. THIS DOES NOT MEAN, HOWEVER, THAT A TAX IS NOT FOR A PUBLIC PURPOSE UNLESS THE BENEFITS FROM THE FUNDS TO BE RAISED ARE TO BE SPREAD EQUALLY OVER THE WHOLE COMMUNITY OR A LARGE PORTION THEREOF. A USE MAY BE PUBLIC ALTHOUGH IT IS OF BENEFIT PRIMARILY TO THE INHABITANTS OF A SMALL AND RESTRICTED LOCALITY. MOREOVER, IT IS SAID THAT ANY DIRECT PUBLIC BENEFIT, NO MATTER HOW SLIGHT, AS DISTINGUISHED FROM THOSE PUBLIC BENEFITS OR INTERESTS INCIDENTALLY ARISING FROM PRIVATE ENTERPRISE, WILL SUSTAIN A TAX.
ID. AT 1016, N. 13 (CITATIONS OMITTED).
THE FOREGOING WAS IN ACCORD WITH THE COURT'S EARLIER RULING IN HELM V. CHILDERS, 75 P.2D 398, 399 (OKLA.1938), WHICH PROVIDED:
 "THE MEANING OF `PUBLIC PURPOSES' FOR WHICH GOVERNMENTAL EXACTION OF MONEY MAY BE HAD IS NOT WITHIN A NARROW AND RESTRICTED SENSE. AT ANY RATE THE COURTS CANNOT INTERFERE TO ARREST LEGISLATIVE ACTION WHERE THE LINE OF DISTINCTION BETWEEN THAT ALLOWABLE AND THAT WHICH IS NOT IS FAINT AND SHADOWY. IN SUCH INSTANCES THE DECISION OF THE LEGISLATURE IS ACCEPTED AS FINAL."
(EMPHASIS ADDED.)
THE COURT IN WAY, SUPRA, THEN WENT ON TO CITE ANOTHER EARLIER CASE WHICH SAID:
 "GOVERNMENTAL ENDS . . . AND EXPENDITURES INCIDENTAL TO THE PROPER REACHING THEREOF, ARE PLACED IN THE HANDS OF THE SOVEREIGN LEGISLATURE . . . NO ONE CAN CALL SUCH BODY . . . TO ACCOUNT FOR ITS OR THEIR EXPENDITURE OF PUBLIC FUNDS . . . UNLESS . . . TO RESTRAIN AND PREVENT THE COMPLETION OF A PURPOSE . . . IN VIOLATION OF THE BASIC LAW OF THE STATE."
635 P.2D AT 1017 (CITATION OMITTED).
THE COURT ALSO INCORPORATED THE LONG STANDING RULE OF "PRESUMPTIVE VALIDITY" OF LEGISLATIVE ENACTMENTS AS AN IMPORTANT PART OF ITS REASONING. FOR EXAMPLE, THE COURT STATED THAT "(I)F THERE IS ANY DOUBT AS TO THE VALIDITY OF AN ACT OF THE LEGISLATURE, THE DOUBT MUST BE RESOLVED IN FAVOR OF THE CONSTITUTIONALITY OF THE ACT OF THE LEGISLATURE." ID. AT 1017 (CITATION OMITTED). THE COURT CONTINUED, AGAIN QUOTING FROM AN EARLIER CASE, STATING THAT "(A)N LEGISLATIVE INTENT TO VIOLATE THE CONSTITUTION IS NEVER TO BE ASSUMED IF THE LANGUAGE OF THE STATUTE CAN BE SATISFIED BY A CONTRARY CONSTRUCTION." ID. AT 1017 (CITATION OMITTED). SIMILARLY, THE COURT STATED THAT IT IS THE "DUTY OF THE COURTS TO UPHOLD LEGISLATIVE ACTS UNLESS IT PLAINLY AND CLEARLY VIOLATES THE CONSTITUTION." ID. AT 1017.
BASED ON THESE RULES, THE COURT IN WAY UPHELD THE APPROPRIATIONS AT ISSUE, CONCLUDING THAT SUCH APPROPRIATIONS WERE FOR:
 `PUBLIC PURPOSES' WITHIN THE MEANING OF ARTICLE X, SECTION 14 . . . AND BY REASON OF THE DETAILED REQUIREMENTS AND QUALIFICATIONS TOGETHER WITH THE GOVERNMENTAL CONTROLS AND SAFEGUARDS WHICH ARE AN INTEGRAL PART OF THE STATUTORY PLAN UNDER WHICH THE PLAINTIFF IS ENABLED TO RECEIVE LEGISLATIVE APPROPRIATIONS, THE APPROPRIATION STATUTES ARE IN THE NATURE OF A UNILATERAL CONTRACT BETWEEN AN AGENCY OF STATE GOVERNMENT AND GRAND LAKE ASSOCIATION, INC., AND . . . ARE NOT, THEREFORE, IN VIOLATION OF ARTICLE X, SECTION 15.
ID. AT 1018.
THE RULING IN WAY WAS AFFIRMED BY THE COURT IN SUBSEQUENT DECISIONS. SEE, DEMOCRATIC PARTY OF OKLAHOMA V. ESTEP, 652 P.2D 271 (OKLA.1982) AND OKLAHOMA CITY NEWS BROADCASTERS ASSOCIATION. INC. V. NIGH, 683 P.2D 72 (OKLA.1984).
PERHAPS THE MOST CONCISE SUMMARY OF THE CURRENT STATUS OF THE LAW IN OKLAHOMA, INCORPORATING SOME OF THE BEST OF THE RULES ENUNCIATED BY THE COURT IN ITS EARLIER AND LATER DECISIONS, IS FOUND IN A.G. OPIN. NO. 82-071 WHEREIN THE ATTORNEY GENERAL, IN CONSTRUING ART. X, 14 AND 15, OPINED:
 "UNDER THESE CONSTITUTIONAL PROVISIONS, THE WELL ESTABLISHED RULE IN OKLAHOMA HAS BEEN THAT PUBLIC FUNDS CANNOT BE USED TO ASSIST INDIVIDUALS, PRIVATE ORGANIZATIONS OR ASSOCIATIONS IN THEIR FUNCTIONS OR ACTIVITIES, NO MATTER HOW WHOLESOME OR BENEFICIAL THE PURPOSES OR ACTIVITIES OF SUCH ENTITIES MAY BE AS TO THAT PORTION OF THE PUBLIC WITH WHICH THEY COME IN CONTACT.
* * *
 THE STATE MAY, HOWEVER, CONTRACT WITH PRIVATE ORGANIZATIONS FOR THE PUBLIC GOOD WHERE PROPER GOVERNMENTAL CONTROLS AND SAFEGUARDS EXIST TO ENSURE THE ACCOMPLISHMENT OF A PUBLIC PURPOSE."
(CITATIONS OMITTED.)
IN A.G. OPIN. NO. 82-071, THE ATTORNEY GENERAL HAD THE OCCASION TO CONSIDER A QUESTION QUITE SIMILAR TO BOTH OF YOUR INQUIRIES. AMONG OTHER THINGS, THE ATTORNEY GENERAL WAS ASKED WHETHER THE OKLAHOMA WHEAT COMMISSION COULD LAWFULLY PROVIDE OFFICE SPACE AND SECRETARIAL SERVICES FOR THE OKLAHOMA WHEAT GROWERS ASSOCIATION, A PRIVATE ORGANIZATION. UTILIZING ART. X, 14 AND 15 AND THE APPLICABLE RULES AS REFERENCED ABOVE, THE ATTORNEY GENERAL FOUND THAT FOR ANY PUBLIC BODY TO PROVIDE OFFICE SPACE AND SECRETARIAL SERVICES FOR A PRIVATE ORGANIZATION OR ASSOCIATION WOULD CONSTITUTE AN UNCONSTITUTIONAL USE OF PUBLIC FUNDS FOR A NONPUBLIC USE.
THE ATTORNEY GENERAL'S CONCLUSION IN A.G. OPIN. NO. 82-071 IS STILL AN ACCURATE STATEMENT OF THE LAW, SEE, E.G., A.G. OPIN NO.'S 86-026 AND 87-038. IT SHOULD PROVIDE YOU WITH RELATIVELY CONCLUSIVE GUIDANCE IN REGARDS TO YOUR FIRST QUESTION. HOWEVER, I WOULD NOTE THAT THE CONCLUSION REACHED IN THAT OPINION WAS BASED ON A SPECIFIC SET OF STATUTES AND FACTS. THEREFORE, WHILE A.G. OPIN. NO. 82-071 IS AN EXCELLENT STATEMENT OF THE GENERAL RULE, IT CANNOT BE BLINDLY APPLIED TO EVERY SITUATION. THE QUESTION OF WHETHER ANY SPECIFIC SITUATION INVOLVING THE SCENARIO YOU DESCRIBE IN YOUR FIRST QUESTION IS VIOLATIVE OF ART. X, 14 AND 15 OF THE OKLAHOMA CONSTITUTION IS A QUESTION OF FACT. A.G. OPIN. NO. 83-149.
FINALLY, SINCE YOUR FIRST QUESTION APPLIES TO ANY PUBLIC BODY OF THE STATE, WHICH COULD POTENTIALLY INCLUDE POLITICAL SUBDIVISIONS SUCH AS A COUNTY OR A CITY, I WOULD PROVIDE ONE MORE IMPORTANT CONSIDERATION. THAT IS, EVEN ASSUMING THAT NO CONSTITUTIONAL LIMITATIONS ARE VIOLATED BY THE PRACTICE WITH WHICH YOU ARE CONCERNED, THE POWER OF A COUNTY OR CITY TO MAKE CONTRIBUTIONS OR APPROPRIATIONS IN AID OF NONGOVERNMENTAL ORGANIZATIONS DEPENDS UPON THE EXACT NATURE AND EXTENT OF THE POWERS CONFERRED UPON IT BY ITS CHARTER, IF ANY, AND THE GENERAL STATUTES APPLICABLE TO IT. SEE, SHIPP V. SOUTHEASTERN OKLAHOMA INDUSTRIES AUTHORITY, 498 P.2D 1395 (OKLA.1972).
II. PUBLIC PURPOSE DOCTRINE AND THE PROVISION OF FREE OFFICE SPACE TO PUBLIC EMPLOYEE CREDIT UNIONS
YOUR SECOND QUESTION ASKS SPECIFICALLY ABOUT THE CONSTITUTIONALITY OF 6 O.S. 2016 (1991). THAT STATUTE IS FOUND WITHIN A SET OF STATUTES DEFINING, REGULATING AND SUPERVISING ALL CREDIT UNIONS IN OKLAHOMA, SEE, 6 O.S. 2001 — 6 O.S. 2026. A CREDIT UNION IS DEFINED THEREIN AS A "COOPERATIVE NONPROFIT SOCIETY INCORPORATED FOR THE PURPOSE OF PROMOTING THRIFT AMONG ITS MEMBERS, AND CREATING A SOURCE OF CREDIT FOR THEM AT LEGITIMATE RATES OF INTEREST FOR PROVIDENT OR PRODUCTIVE PURPOSES." 6 O.S. 2001 (1991). THE STATUTE WITH WHICH YOU ARE CONCERNED PROVIDES, IN PERTINENT PART, THAT:
 "CREDIT UNIONS COMPOSED EXCLUSIVELY OF STATE, COUNTY, CITY AND SCHOOL DISTRICT EMPLOYEES AND MEMBERS OF THEIR FAMILIES MAY BE ALLOTTED SPACE IN PUBLIC BUILDINGS AS SPACE IS AVAILABLE, WITHOUT CHARGE FOR RENT OR SERVICES." 6 O.S. 2016
IN DETERMINING THE CONSTITUTIONALITY OF 2016 UNDER THE OKLAHOMA CONSTITUTION, THE SAME CONSTITUTIONAL PROVISIONS AS DISCUSSED IN THE PRECEDING SECTION WOULD BE IMPLICATED, I.E., ART. X, 14, 15
AND ARTICLE X, SECTION 17 OF THE OKLAHOMA CONSTITUTION. HOWEVER, MY RESEARCH INDICATES THAT NEITHER THE OKLAHOMA SUPREME COURT NOR THE ATTORNEY GENERAL HAVE RULED DIRECTLY ON THE CONSTITUTIONALITY OF 2016 IN LIGHT OF THOSE PROVISIONS. THEREFORE, A DETERMINATION OF ITS CONSTITUTIONALITY WOULD PREDICTABLY REQUIRE AN ANALYSIS SUCH AS THE ONE DISCUSSED AT LENGTH IN THE PRECEDING SECTION. HOWEVER, I SHOULD NOTE THAT SUCH AN ANALYSIS WOULD ALSO NECESSARILY INVOLVE THE RESOLUTION OF CERTAIN QUESTIONS OF FACT BEFORE A SPECIFIC SITUATION COULD BE CONCLUSIVELY HELD TO INVOLVE A VIOLATION OF ART. X, 14 AND 15. SEE, A.G. OPIN. NO. 83-149.
WHILE A FINAL CONSTITUTIONAL DETERMINATION APPEARS TO BE DEPENDENT ON QUESTIONS OF FACT, IT IS STILL POSSIBLE TO MAKE CERTAIN GENERAL OBSERVATIONS ABOUT THE CONSTITUTIONALITY OF 2016 BY A REVIEW OF ITS LANGUAGE. WHEN MAKING SUCH OBSERVATIONS, THE APPLICATION OF THE GENERAL PRINCIPLES REAFFIRMED IN WAY V. GRAND LAKE ASSOCIATION. INC.. ET AL., 635 P.2D 1010 (OKLA.1981), SHOULD BE HELPFUL. THESE WOULD INCLUDE THE RULES THAT LEGISLATIVE ACTS MUST BE UPHELD UNLESS THEY PLAINLY AND CLEARLY VIOLATE THE CONSTITUTION, THE "PRESUMPTIVE VALIDITY" OF LEGISLATIVE ENACTMENTS, THAT ANY DOUBTS ABOUT THE VALIDITY OF A LEGISLATIVE ACT MUST BE RESOLVED IN FAVOR OF CONSTITUTIONALITY AND THAT A LEGISLATIVE INTENT TO VIOLATE THE CONSTITUTION IS NEVER TO BE ASSUMED. THE TREND TOWARDS CONSTITUTIONALITY IN REVIEWING LEGISLATIVE ACTS IN LIGHT OF ART. X, 14 AND 15 MUST ALSO BE NOTED. IN OTHER WORDS, THE TREND APPEARS TO BE THE EXPANSION OF WHAT IS CONSIDERED TO BE A PUBLIC PURPOSE. SEE, WAV, SUPRA; HELM V. CHILDERS, SUPRA.
WHEN CONSIDERING THE PURPOSE THAT 6 O.S. 2016 IS DESIGNED TO ACHIEVE, THERE IS A VIABLE ARGUMENT THAT IT WOULD BE CONSTRUED AS A PUBLIC ONE. FOR EXAMPLE, THE EXPRESSLY STATED PURPOSE OF CREDIT UNIONS, AS PROVIDED IN 6 O.S. 2001, IS TO PROMOTE THRIFT AMONG ITS MEMBERS, AND TO CREATE A SOURCE OF CREDIT FOR THEM AT LEGITIMATE RATES OF INTEREST FOR PROVIDENT OR PRODUCTIVE PURPOSES, THEREBY IMPROVING THEIR ECONOMIC AND SOCIAL CONDITION. SIMILARLY, IT HAS BEEN RECOGNIZED IN OKLAHOMA THAT THE PROMOTION OF THE ECONOMIC WELFARE OF OKLAHOMA'S CITIZENS IS A VALID PUBLIC OR GOVERNMENTAL PURPOSE THAT THE STATE AND THE SUBORDINATE GOVERNMENTAL SUBDIVISIONS MAY LEGITIMATELY ENGAGE IN. SEE, APPLICATION OF SOUTHERN OKLAHOMA DEVELOPMENT TRUST, 470 P.2D 572 (OKLA.1970); SUBLETT V. CITY OF TULSA, 405 P.2D 185 (OKLA.1965); A.G. OPIN. NO.'S 86-26 AND 86-071.
IN THE CASE OF 6 O.S. 2016, THE MEMBERS OF THE AFFECTED CREDIT UNIONS ALSO HAPPEN TO ALL BE "PUBLIC EMPLOYEES". SINCE THE EXPRESS PURPOSE OF CREDIT UNIONS IS TO IMPROVE THE ECONOMIC AND SOCIAL CONDITION OF ITS MEMBERS, IT IS ARGUABLE THAT ONE OF THE PRIMARY PURPOSES BEHIND 2016 IS TO IMPROVE THE ECONOMIC AND SOCIAL CONDITION OF PUBLIC EMPLOYEES. INCREASED BENEFITS FOR PUBLIC EMPLOYEES WOULD APPEAR TO HELP TO RETAIN QUALIFIED PUBLIC EMPLOYEES, THEREBY BENEFITTING THE PUBLIC AS A WHOLE. ACCORDINGLY, THE PROVISION OF PUBLIC MONIES, I.E., FREE PUBLIC OFFICE SPACE, TO PUBLIC EMPLOYEE CREDIT UNIONS, WHILE ARGUABLY BEING APPROPRIATED TO A PRIVATE ORGANIZATION, MAY STILL REPRESENT PUBLIC MONIES BEING EXPENDED TO CARRY OUT A PROPER GOVERNMENTAL OR PUBLIC PURPOSE. IT SHOULD BE REMEMBERED THAT ONCE A PUBLIC PURPOSE IS DETERMINED, IT DOES NOT MATTER THAT A PRIVATE AGENCY IS THE RECIPIENT OF THE PUBLIC MONIES EXPENDED TO ACHIEVE SUCH PURPOSE. INDUSTRIAL DEVELOP. AUTH. V. EASTERN KY. REG. PL. COM'N., SUPRA.
HOWEVER, THERE ARE POSSIBLE CONSTITUTIONAL CONCERNS ABOUT 2016, ESPECIALLY IN LIGHT OF THE COURT'S RULING IN WAY, SUPRA. FOR EXAMPLE, THERE IS NO EXPRESS STATEMENT OF PUBLIC PURPOSE EVEN THOUGH 2001'S STATEMENT OF PURPOSE IN RELATION TO CREDIT UNIONS COULD BE READ TO PROVIDE THAT REQUISITE WHEN 6 O.S. 2016 IS UTILIZED. ALSO, THERE APPEAR TO BE NO EXPRESS CONTROLS OR SAFEGUARDS IN PLACE TO ENSURE THAT A PUBLIC PURPOSE IS BEING CARRIED OUT EVEN THOUGH THE TERMS OF ANY LEASE BETWEEN THE PARTICULAR PUBLIC BODY AND THE PARTICULAR CREDIT UNION COULD POSSIBLY PROVIDE SUCH CONTROLS AND THE CONTRACT NECESSITATED BY WAY. I AM ALSO CONCERNED THAT NO COMPENSATION OR CONSIDERATION IS REQUIRED FOR THE PUBLIC OFFICE SPACE. IF COMPENSATION WERE PROVIDED FOR IN 2016, THE ANSWER TO YOUR SECOND QUESTION WOULD BE MORE CLEAR BECAUSE THE ATTORNEY GENERAL HAS SPECIFICALLY RULED THAT A PUBLIC BODY, THE BOARD OF REGENTS OF A JUNIOR COLLEGE, COULD ALLOW A PRIVATE ORGANIZATION TO USE ITS FACILITIES SO LONG AS REASONABLE CONSIDERATION WAS PAID. A.G. OPIN. NO. 83-149.
I WOULD ALSO NOTE THE "NONPROFIT" NATURE OF CREDIT UNIONS, AS DEFINED IN 2001. IF INDEED CREDIT UNIONS ARE VIEWED AS "CHARITABLE" TYPES OF ORGANIZATIONS, IT WOULD BE IMPORTANT TO NOTE THAT APPROPRIATIONS OF PUBLIC FUNDS TO NONGOVERNMENTAL CHARITIES HAVE BEEN HELD TO BE BOTH CONSTITUTIONAL AND UNCONSTITUTIONAL BY VARIOUS COURTS. SEE, E.G., HAGER V. KENTUCKY CHILDREN'S HOME SOC., 83 S.W. 605 (KY.APP.1904); STATE V. CITY OF NEW ORLEANS, 24 SO. 666 (LA.1898). THIS DIVERSITY IN OPINIONS POINTS OUT THE IMPACT OF DIFFERING SETS OF FACTS UPON DETERMINATIONS OF CONSTITUTIONALITY MADE PURSUANT TO SIMILAR, IF NOT THE SAME, CONSTITUTIONAL LANGUAGE.
III. CONCLUSION
IT IS, THEREFORE, THE OPINION OF THE UNDERSIGNED ATTORNEY THAT, UNDER ART. X, 14 AND 15 OF THE OKLAHOMA CONSTITUTION, A STATUTE PROVIDING FOR THE EXPENDITURE OF PUBLIC MONIES FOR A PRIVATE PURPOSE IS UNCONSTITUTIONAL. IN OTHER WORDS, EXPENDITURE OF PUBLIC FUNDS MUST BE FOR A PUBLIC PURPOSE. GENERALLY, THE ALLOCATION OF PUBLIC OFFICE SPACE TO A PRIVATE ORGANIZATION, WITHOUT ANY CHARGE FOR RENT OR SERVICES, WOULD BE VIOLATIVE OF THE ABOVE-REFERENCED CONSTITUTIONAL PROVISIONS.
HOWEVER, THE TERM "PUBLIC PURPOSE" IS QUITE ELASTIC. IT IS CERTAINLY ARGUABLE THAT THE PROVISION OF "RENT-FREE" PUBLIC OFFICE SPACE TO PUBLIC EMPLOYEE CREDIT UNIONS FALLS WITHIN THE BOUNDARIES OF THE TERM. ALSO, ONCE THE PUBLIC PURPOSE IS FOUND TO EXIST, IT DOES NOT LOSE ITS CHARACTER BY THE MERE FACT THAT A PRIVATE ORGANIZATION IS THE RECIPIENT OF THE PUBLIC MONIES OR PROPERTY INVOLVED, SO LONG AS SUFFICIENT CONTROLS AND SAFEGUARDS EXIST TO ENSURE THAT THE PUBLIC PURPOSE IS ACHIEVED. ADDITIONALLY, THE EXPENDITURE OF PUBLIC MONIES BY THE LEGISLATURE IS PRESUMED VALID AND SHOULD NOT BE CONSTRUED TO BE UNCONSTITUTIONAL UNLESS IT CLEARLY APPEARS TO BE SO.
WHETHER A PARTICULAR STATUTE, SUCH AS 6 O.S. 2016 (1991), WOULD BE VIOLATIVE OF ARTICLE X, SECTION 14/ARTICLE X, SECTION 15 OF THE OKLAHOMA CONSTITUTION WOULD DEPEND UPON THE UNIQUE FACTS INVOLVED IN THE ACTUAL APPLICATION OF THE STATUTE AND THE RESULTS REACHED WHEN THE LEGAL RULES DISCUSSED IN THIS INFORMAL OPINION ARE APPLIED TO THOSE SPECIFIC FACTS. SUCH A QUESTION OF FACT IS NOT ANSWERABLE AS A MATTER OF LAW IN AN ATTORNEY GENERAL'S OPINION.
(WILLIAM D. LAFORTUNE)